IN THE

# Supreme Court of Georgia,

## AT ATLANTA.

### FEBRUARY TERM, 1880.

PRESENT—HIRAM WARNER, . . . . CHIEF JUSTICE.
    JAMES JACKSON, . . . . ASSOCIATE "
    MARTIN J. CRAWFORD, . .   "   "

## PORTER & MUMFORD vs. GORMAN.

1. Where action was brought for breach of covenant, and a recovery is sought upon an alleged agreement not found therein, the plaintiffs must allege that such was the real contract, that the omission was caused by fraud, accident or mistake, and that one or both parties intended its insertion.

2. When a business is sold, a stipulation is necessary to prevent the seller from carrying on the same occupation in that town; but the mere purchase of the "good will" will not compel such result.

Covenant. Contracts. Pleadings. Sales. "Good-will." Before Judge CRAWFORD. Talbot Superior Court. September Term, 1879.

Reported in the decision.

WILLIS & WILLIS; J. H. MARTIN; J. F. POU, for plaintiffs in error.

W. A. LITTLE, for defendant.

v 65—2

CRAWFORD, Justice.

This was a suit against the defendant for a breach of covenant arising upon a deed conveying to the plaintiffs " all the printing press and presses, type, printing material, chases, cases, stands, fixtures, and all appurtenances thereto belonging, together with the good-will of the Talbotton *Standard* newspaper," and not a bill in equity nor an equitable proceeding at law to reform a written contract.

The plaintiffs alleged that the good-will of the paper was worth $1,200.00, and so estimated in the trade, and that in consideration thereof it was further agreed by the defendant, and he promised that he would not put up and carry on another paper in the town of Talbotton, yet on the first day of January, 1877, the said defendant established another paper and reduced their rates to one-half of what they were before, thereby injuring them $1,500.00. The defendant demurred to this declaration, which demurrer was sustained by the court, and the plaintiffs amended by alleging " that at the time plaintiffs purchased, defendant *said* that he meant by ' good will ' that he could not put up another printing press in Talbotton, and relying upon said representation and warrant that he would not put up another press in Talbotton, the same was left out of the agreement." " And it was expressly understood between said parties that said Gorman would never again engage in the newspaper business in Talbotton, and it was not put in because it was agreed and understood that it was not necessary, as he would not and could not, under said covenant, put up another printing press in Talbotton."

The defendant demurred to the declaration as amended, and upon the argument of the demurrer the covenant itself was read and commented on by the counsel of the parties. The court held " that if the plaintiffs desired to introduce evidence under the declaration as amended, to add to the

covenant a new feature or obligation that the defendant was never to engage in the newspaper business again in Talbotton, they must allege that *that was the contract*, and that it was left out by fraud, accident or mistake, and that one or both intended its insertion. That without some such allegation this covenant could not be extended to cover a new stipulation of that sort not in the writing. That if the deed did not speak the bargain it could be made to do so by having it reformed, but that without some legal reason shown for it, a new condition could not be engrafted upon the written contract." No further amendments were offered to bring the plaintiffs within the legal rule required by the court, that there must be some allegation either of fraud, accident, or mistake before a covenant, or indeed any written contract, can be added to changing its terms. This ruling of the court was thereupon excepted to and assigned as error.

A close examination of the declaration and its amendments will show, first, that although brought on *a covenant*, for a *breach thereof*, yet the breach alleged was upon a promise and an agreement not found therein, but alleged to have been made contemporaneously therewith; and second, upon the ground that the "good-will" stated in the covenant carried with it the obligation not to establish another paper in Talbotton.

1. The deed defines and specifies the sale of the printing press, type, etc., and all the appurtenances, together with the good-will of the Talbotton *Standard* newspaper, and concludes with the words, "I do for myself and heirs, executors and administrators, hereby covenant and agree to warrant and defend the said property to the said Porter & Mumford, their heirs, etc., against the lawful claims and demands of all persons whatsoever."

It is not asserted that this deed does not express the contract as made and accepted by the plaintiffs; if it does not, the mistake, the accident, or the fraud, should be alleged, proven, set up and enforced. It has been ruled

by this court, that even an allegation that the parol promise was with the intent to defraud is insufficient, unless left out by mistake or fraud, to authorise the introduction of parol proof to change the contract as written.   52 *Ga.*, 149.

To allow parol evidence to contradict or vary a written contract, it must be alleged that there was fraud, accident or mistake in the written contract, how the mistake occurred, or fraud was committed, and that one or both intended its insertion.   56 *Ga.*, 31 and 32.   The averments thereof must be *full* and *explicit*.   60 *Ga.*, 159.   It must further appear in what it *consisted*.   59 *Ga.*, 850.   We see no reason why, if the facts warrant the allegation in this case, that the deed may not be made to speak the real bargain and then be enforced.   57 *Ga.*, 319.

2. Good-will is defined by Lord Eldon to be "nothing more than the probability that the old customers will resort to the old place."   No subsequent definition has changed in any material respect this rendition, and all the writers seem to have recognized and adopted it.   See Bouvier's Law Dictionary, title "Good-will;"   Coll. on Partnership, 1, 149 and note; Story on Partnership, §99. Do, therefore, these words stated in the covenant carry with them the obligation not to establish another paper in the same town?   They carry nothing but the good will of the Talbotton *Standard*, and the probability that its customers will continue their patronage in the future as in the past.

A stipulation is necessary to prevent the party from carrying on the same business, and when the contract is guarded by such stipulation it will be enforced, but the mere purchase of the good-will simply is insufficient to restrict a party in the enjoyment of a right which he has not bargained away.   See Addison on Contracts, vol 1, p. 412; 14th Vesey R., 469; 17 Vesey, 334–346.

Judgment affirmed.