## Martin J. McGowan *vs.* John H. Griffin et al.

October Term, 1896.

Present: Ross, C. J., Taft, Rowell, Tyler, Munson and Start, JJ.

*"Business" May Include Cash on Hand—Independent Covenants.*

The plaintiff, by contract under seal, sold and transferred to the defendants his interest in a grocery business carried on by himself and one of the defendants, and the question arose whether money in hand and on deposit at the bank, realized from sales in the store and intended to be used in future purchases, passed. *Held,* that it did, in view of the circumstances attending the creation and conduct of the business and the previous relations of the parties.

The defendants, in the same instrument, covenanted to pay the plaintiff a stipulated sum. *Held,* that the plaintiff could recover upon the covenant though he had not turned over said funds, the remainder of the business having been transferred and accepted; and that the defendants could recoup their damages for the detention.

Covenant Broken. Plea, the general issue with notice of special matter in defense and a tender. Trial by jury at the September Term, 1895, Washington County, *Thompson,* J., presiding. At the close of the testimony the court submitted special inquiries to the jury but directed a general verdict for the defendants. The plaintiff excepted.

The special inquiries and answers were as follows:

*Question 1.* "At the time of the execution and delivery of contract marked 'A,' were Martin J. McGowan and John P. McGowan partners in the grocery business?" *Answer,* "No."

*Question 2.* "At the time of the execution and delivery of said contract marked 'A,' did the plaintiff and defendants understand that it included and conveyed to the defendants the money on hand and on deposit in the bank, received from the business mentioned in said contract?" *Answer,* "No."

The plaintiff's evidence tended to prove, and the defendants' to contradict, these findings.

*John W. Gordon* for the plaintiff.

The word, "business," did not include the cash on hand nor the deposit at the bank, as matter of law, and the jury found that the parties did not so understand it, as matter of fact.

The turning over of the money by the plaintiff, even if it was required by the contract, was not a condition precedent to the plaintiff's right to recover, and he was entitled to recover at least the balance due to him after deducting the amount of the money retained by him. *Plumb* v. *Niles*, 34 Vt. 230; *Taylor* v. *Gallup*, 8 Vt. 340; *Boone* v. *Eyre*, 1 H. Bl. 273 n.; *Stavers* v. *Curling*, 3 Bing. N. C. 355; *Tompkins* v. *Elliott*, 5 Wend. 496; *Foster* v. *Purdy*, 5 Met. 442.

*R. A. Hoar* and *S. C. Shurtleff* for the defendants.

The word, "business," included the cash and bank deposit as matter of law, as the court held.

The surrender of the money and deposit was a condition precedent to the plaintiff's right of recovery. II Green. Ev. § 235; *Lawrence* v. *Dole*, 11 Vt. 549; *Day* v. *Essex County Bank*, 13 Vt. 97.

Ross, C. J. The plaintiff insists that the court erroneously ordered a verdict in favor of the defendants.

(1) He says the contract under consideration should not be construed to cover the money taken by the plaintiff. By that contract the plaintiff sold and conveyed to the defendants "all his right, title and interest in and to the business heretofore carried on by him and John P. McGowan under the name and style of The Boston Branch Grocery store, and under the name of Martin J. McGowan, proprietor, at North Barre in the County of Washington." In another clause, he "transfers, conveys and assigns" to the defendants "all accounts due said firm," and in consideration thereof the defendants agree "to pay all debts and assume all

obligations and liabilities contracted for and on behalf of said firm," and to pay the plaintiff a stipulated sum. Annie McGowan, the mother of the plaintiff, one of the defendants, "acknowledges full satisfaction and payment of all monies borrowed of her * * * for or on behalf of said business." This contract is under seal and is dated November 15, 1894. This contract is to be read and construed in the light of the circumstances surrounding the establishment and carrying on of the business and attending the making of the contract. These circumstances were, in substance, the following: In 1893, the plaintiff and his brother, John P. McGowan, were in Massachusetts working upon the railroad. John P's habits were not entirely good, and he did not save his earnings. Their mother, Annie McGowan, was desirous to have them engage in some other business. For that purpose she purchased a building in North Barre, the first story of which could be used for a grocery store, and the second story for a tenement. She induced the brothers to come there and go into the grocery business. She gave them the use of the building and furnished them, without interest, some fourteen hundred dollars to start the business with. The plaintiff had a wife and child. John P. was unmarried. The plaintiff furnished three hundred or three hundred and fifty dollars to put into the business. He borrowed of an aunt two hundred dollars which is a part of the debts contracted on behalf of the business which the defendants were to pay. The mother, the plaintiff and family, and John P. lived in the tenement over the store, out of the store. The plaintiff and John P. devoted their time to conducting the business. Neither of them received wages. On account of the habits of John P. the business was controlled mostly by the plaintiff, but there was an understanding that if John P's habits improved, he was to have an equal share in the business with the plaintiff. The business was thus started in the name of The Boston Branch Grocery store the first of April, 1894, and continued until the time of the sale.

During the last part of the time, the plaintiff procured the printing of some bills headed, "The Boston Branch Grocery Store, Martin J. McGowan, proprietor." Money received from the business had been deposited in a bank, and this account was kept in the plaintiff's name, and he drew the checks to pay for purchases. John P's habits were not always what they should be.

About the first of November the relations of the brothers became unpleasant and John P. went to Massachusetts. His mother procured his return and procured her brother to come and to see if a settlement could not be brought about. After he came and had had some talk with the plaintiff about a settlement, on the evening of Saturday, the 10th of November, the plaintiff, as was his usual habit, took from the money drawer of the store nearly what money there was there and took it to his tenement. This money all came from the business of the store and was not returned. The plaintiff also had money on deposit in the bank coming from the same source. The parties do not agree in regard to what was said about this money during the negotiations, which resulted in the contract.

They agree that the negotiations which so resulted, were so far advanced that the defendants took possession of the store on Monday morning, November 12th, and continued in possession until the contract was signed. On November 14th the plaintiff drew most of the money out of the bank. Two or three forms of a contract were drawn, and finally the one which was executed on November 15th. Construed in the light of these surroundings, this money which the plaintiff took belonged to and was a part of the business done under the name of The Boston Branch Grocery Store, as much as the goods in the store. It came from the sale of such goods, and was intended to be used in purchasing goods for the store. It was a part of the capital which the mother and plaintiff had furnished to carry on the business. By conveying to the defendants all his interest in the business

the plaintiff conveyed all his right, title and interest in and to this money, as fully as he did to the goods on hand, in the store.  It is immaterial whether the plaintiff and his brother were in partnership.  A grocery business had been created in the manner indicated, and it is not material to the construction to be placed on the contract, to determine the exact legal status of the business, and the rights of the several parties interested therein.  It is not contended that it was not the duty of the court to construe the contract. It correctly construed it as conveying this money which came from the sale of goods from the store.  It would be too narrow to construe the word, "business," to be the good will of the business, as contended by the counsel for the plaintiff. The good will of a business is not the business but is one result springing out of it.  The circumstances do not raise any latent ambiguity, when the language of this contract is applied to the subject matter thereof.  The special findings of the jury were both immaterial to the determination of the legal rights of the parties under the contract.  But they were submitted by the court without exception, to determine points on which the parties were at variance in their testimony.  The second finding is inconsistent with the general verdict ordered by the court.  Whether against the plaintiff's motion to set aside the verdict, the court could reject this special finding, inconsistent with the general verdict ordered, we do not consider.

(2)  The plaintiff further contends that the court erred in ordering a verdict for the defendants, for that, conceding that the money taken by the plaintiff from the business belonged, by the terms of the contract, to the defendants, the plaintiff was entitled to a judgment for the balance due him under the contract.

The action is covenant broken.  The plea is that the indenture declared on is not the deed of the defendants.  In their testimony the defendants concede that they executed the indenture.  They also concede that they have received all

the property conveyed except the money taken by the plaintiff which belonged to the business. Its amount is not determined. The defendants at one time offered to pay the plaintiff seventy-five dollars as the balance due him under the contract. The testimony does not show that they made him a tender of that sum of money; nor is a tender pleaded and brought into court. Neither has it been determined, if made and kept good as a tender, whether this sum is sufficient to pay the balance due the plaintiff.

This action of the court cannot be sustained on the ground that the defendants, before suit, had made, kept good, and brought into court for the plaintiff a tender sufficient to pay him the balance due under the contract. The exceptions state that the defendants offered to pay the plaintiff such a sum as should be found due him, if he would account for the money he had taken which belonged to the business at the time of the sale. This offer would not defeat the plaintiff from recovering such balance in this suit.

From the copy of the charge, it appears that the court made this ruling upon the ground that the plaintiff had refused to fulfill his part of the contract by claiming, in good faith, that the money belonging to the business which he had taken belonged to him and did not pass to the defendants by the contract. The covenants of the parties to the contract, were, in part, to be performed by them concurrently. The plaintiff was to surrender to the defendants all the property belonging to the business at the same time they were to pay the four hundred and seventy-five dollars. This sum was not the entire consideration for his covenant to surrender to them all the property and assets belonging to the business. They were also to pay and save him harmless from all debts and liabilities incurred on behalf of the business.

The plaintiff has surrendered to the defendants all the assets of the business except the money taken by him, and they still hold possession of the same. The withholding of

this money was a breach of the plaintiff's covenant, but the damages arising therefrom were definitely ascertainable. It being a breach of his covenant in the same indenture on which he had brought his suit, the defendants could recoup the damages arising to them from his refusal to perform, from the contract price, to recover which the plaintiff brought the suit. The tendency of the decisions of this and other courts is to hold mutual covenants or stipulations, to be performed concurrently by parties to a contract, as independent rather than as dependent, and to allow a recovery by a party, who has partly but not fully performed, when the damages arising from his non-performance can be readily ascertained, and, by reduction or recoupment, taken from the amount he is entitled to receive by the terms of the contract for performance of his stipulation or covenant. This subject is fully considered in *Booth* v. *Tyson* 15 Vt. 515. After stating that modern decisions make an entire fulfilment requisite to a recovery applicable for the most part to contracts for labor, the doctrine of the decisions summarized and adopted is thus stated: "The principle of these cases seems to be, that, although the contract is in one sense entire, *i. e.* full performance on the part of the promisor is of the consideration of the contract, yet, if it contains, neither expressly, or by strong implication, a condition of full performance, precedent to any right to claim pay, and is of a uniform nature, and thus capable of just apportionment, the court will consider the promises independent and apportionable, and suffer a recovery for part performance, subject to the deduction of whatever damages the party, entitled to claim full performance, may have sustained." See also *Davenport* v. *Hubbard*, 46 Vt. 200. The rule thus stated is clearly applicable to this case. The plaintiff has performed a substantial part of his covenant in regard to the sale and delivery of the assets of the business. The defendants have not rescinded, nor offered to rescind, the contract because of his failure to fully perform, but hold the property delivered.

His failure to refund the money which he took from the business, and the damages occasioned thereby are readily ascertainable, and can be adjusted in reduction of the sum to which the plaintiff is entitled by the defendants' covenant, so as fully to compensate the defendants for the plaintiff's failure fully to perform his covenant. Hence while the court correctly construed the contract, in suit, against the plaintiff, he was still entitled to recover so much of the stipulated price to be paid him as he should receive under the rule already stated, and the court erred in directing a verdict against him.

*Judgment reversed and cause remanded.*