### ARMSTRONG *et al. v.* ATLANTIC ICE AND COAL CORPORATION *et al.*

The court did not err in granting the interlocutory injunction.
FEBRUARY 28, 1914.

Injunction. Before Judge Brand. Clarke superior court. March 31, 1913.

The Athens Ice and Coal Company, hereinafter referred to as the Athens company, brought its petition against G. C. Armstrong, B. S. Dobbs, and W. A. Sams, alleging: that petitioner was duly incorporated under the name of Athens Ice and Coal Company, and until the year 1910 was actively engaged in the manufacture and sale of ice and in the carrying on of a coal and wood business; that although since that time it has not been as actively engaged in such business, by reason of having sold certain of its assets to another corporation, it nevertheless continues to exist under its original charter, with the right of enjoyment of the privileges therein conferred; that it has outstanding a number of accounts and choses in action due it, in the collection of which and the handling of business incident thereto it receives a good deal of mail addressed to it in its said name; that the defendants have filed an application for a charter, asking to be incorporated under the name of Athens

Ice and Coal Company, the same name as that of petitioner; and the defendants are hereinafter referred to, for convenience, as the proposed company. The Athens Company, charges that the defendants are not entitled to a charter under said name for the purpose of carrying on an ice and coal business, and that to grant them such charter would work irreparable harm and injury to the Athens Company, which prays for an order of the court restraining and enjoining the defendants from presenting their application for a charter under said name, and that said application be denied. The Atlantic Ice & Coal Corporation, hereinafter referred to as the Atlantic Company, upon its petition was made a party plaintiff, joined in the prayer for injunction, and showed that it had purchased the assets and good will of the Athens Company as well as its plant and the property connected therewith. Other material facts alleged in the petition of the Atlantic Company are set forth in the opinion.

The defendants alleged in their answer, that the Athens Company had sold out all of its property, with the exception of certain choses in action, notes and accounts, wood and coal on hand, and manufactured products, to the Atlantic Company in 1910, including in said sale its good will; that since that time the Athens Company has not engaged in the coal and ice business in Athens or elsewhere; that it has not kept up its corporate organization, has no officers or agents, and is in fact a defunct corporation, and is not entitled to the injunction prayed for. The court upon the interlocutory hearing granted the injunction.

*Cobb & Erwin*, for plaintiffs in error.

*Payne & Jones* and *Lamar Rucker*, contra.

BECK, J. (After stating the foregoing facts.) We are of the opinion that the court did not err in granting the injunction in this case. While this is not strictly a trade-mark case, as where the owner of the trade-mark or the assignee of such, who acquired it either by express contract or purchase of the assets and good will of the one who was the original owner of the trade-mark, seeks injunction against infringement, it is analogous to such a case. The Atlantic Ice & Coal Corporation was the purchaser, not only of all the assets of the Athens Ice & Coal Company, except certain stock on hand and accounts, but of the good will of the Athens Company. The term "good will" has received various definitions;

30

among them we find the following: "Good will is the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or from celebrity or reputation for skill or affluence or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices." 4 Words & Phrases, 3128, and authorities cited. "Good will is the favor which the management of a business wins from the public, and the probability that old customers will continue their patronage and resort to the old place. Good will is an advantage or benefit which is acquired by business establishments, beyond the mere intrinsic value of the capital stock. It is the general public patronage and encouragement which a business receives from its customers on account of its local position." Vonderbank v. Schmidt, 44 La. Ann. 264 (10 So. 616, 617, 15 L. R. A. 462, 32 Am. St. R. 336). If this were strictly a trade-mark case, where the transferee under a contract of purchase and sale of the assets and good will of another company was seeking to prevent the infringement of the trade-mark, though the trade-mark had not been mentioned in the contract of sale which passed title to the assets generally, the vendee of such assets and good will would acquire the trade-mark of the vendor company, if the trade-mark was of that class which is applied to a commercial article to indicate its origin at a particular manufactory or its origin with a particular dealer; and the right to prevent by injunction a threatened infringement would follow the ownership of the trade-mark.

In the present case the Atlantic Company, the purchaser of the good will of the Athens Company, is entitled to all those advantages which generally inure to any purchaser holding itself out to the public as succeeding to an enterprise which has been so conducted in the past by the predecessor of the purchaser as to gain good name, repute, and patronage. The purchaser of the assets and good will of the Athens Company has the same stand or location of business as its predecessor; on the top of the building in which is located the ice plant which now belongs to the Atlantic Company, and formerly belonged to its predecessor, is the sign "Athens Ice & Coal Company," which sign is in a most conspicuous

position on the top of the building, facing two public streets, and which sign is so conspicuous, being about 100 feet long and 4 feet wide, as to attract the attention of the public and constitute a valuable advertisement and asset. Besides this, some five or more delivery wagons formerly belonging to the Athens Company have, since the sale and transfer of the property to the Atlantic Company, been operated by the latter. The sign on the top of the ice plant, and the wagons carrying the name of the old company, the Atlantic Company has the right to maintain and use, and the Atlantic Company has the right to advertise itself as the successor to the Athens Company and to all other advantages which it may derive from being such successor; such advantages being comprised in the good will which was bought. Under the evidence in the case the court was authorized to find that this "good will" which had been bought by the Atlantic Company was a thing of value, and that this thing will lose at least a part of its value if another company is incorporated and permitted to operate under the name of the vendor of the good will sought to be preserved in this action brought for injunctive relief. If the proposed company is permitted to be incorporated and do business under the same name as that of the Atlantic Company's vendor, it would no doubt erect signs and carry advertisements at its plant and on its delivery wagons showing that they were part of the equipment of the "Athens Ice & Coal Company," and would in this way (the court was authorized to find) acquire a part of the trade and patronage which the former Athens Ice & Coal Company had built up and established, to which patronage the purchaser of the assets and good will of the original Athens Ice & Coal Company would in a large measure succeed, unless it should be diverted by the new corporation which, under the same name as that of the original Athens Company, will be, if chartered under the pending application, identified with the original Athens Company in the minds of the former patrons, who would probably, but for the confusion arising from the identity of names, continue "to resort to the old place." And on high authority it might be said that the probability of customers resorting to the old place constitutes "good will." *Porter & Mumford* v. *Gorman,* 65 *Ga.* 11. Such a diversion of the trade and patronage to which the successor to the original Athens Ice & Coal Company and the legitimate owner of the good will of that company would

have succeeded would amount to unfair competition in trade. In a certain sense it would be a fraud on the public; for there is evidence to show that a large percentage of those who buy of the Atlantic Company still think it to be the Athens Company, and even make their checks sent in payment of their bills payable to the Athens Ice & Coal Company. And if a new ice and coal company is permitted to operate in the same city under the name of the Athens Ice & Coal Company, they will attract a part of the public as customers, not by their own merit alone, but because such customers have been in the habit of trading, when buying ice and coal, with the Athens Ice & Coal Company. These customers will go to the new corporation, in part at least, because of the association of ideas which leads them, when needing the articles just named, to a business concern having the same name as the old Athens Company which dealt in these commodities; and this very association of ideas, which leads customers intent on purchasing certain commodities to the same stand as that at which they formerly made such purchases, is one of the elements embraced in the term "good will." And while the proposed corporation would not actually have the same "stand" in a physical sense, they would practically have it, as they would have the same name in the telephone book; and thus the proposed company, merely by becoming incorporated under a particular name, would obtain a share of the "good will" of the original Athens Company for which they have paid nothing, but which has been bought and paid for by the Atlantic Company.

Injunction affords the only adequate remedy and protection to the imperiled rights of the Atlantic Ice & Coal Corporation, and the court properly granted the injunction. Having held that the injunction was properly granted upon the suit of the Atlantic Ice & Coal Corporation, it is not necessary to decide whether the Athens Ice & Coal Company made a case entitling them to injunctive relief.

*Judgment affirmed. All the Justices concur, except Evans, P. J., absent.*