## MORRIS-FORRESTER OIL CO. *v.* TAYLOR *et al.*

In a contract for the sale of certain personal property used in the conduct of a wholesale gasoline and motor-oil business, etc., and the good will and trade-name of said business, wherein there is embodied a stipulation and covenant that the vendors "shall not enter into the same kind or similar business anywhere within a radius of 20 miles of Atlanta, Georgia," the covenant must be construed as precluding the right of the vendor making such covenant to engage in or in any manner participate in aid of sales of gasoline and motor oils by wholesale within the proscribed territory, and to prohibit him from such sales as the employee or sales agent of another as if he were the sole proprietor of the business in which he is in fact only an employee.

No. 3899. APRIL 29, 1924.

Petition for injunction. Before Judge Humphries. Fulton superior court. May 17, 1922.

*Parker & Patterson,* for plaintiff.

*Branch & Howard,* for defendants.

RUSSELL, C. J. It is established by the record in this case that O. F. Taylor and Reamer Todd owned a wholesale gasoline and motor-oil business in the City of Atlanta, known by the name of the White Eagle Oil Company and the Todd Oil Company, and that they sold this business and its good will as well as its personal property and equipment to L. M. Morris, C. R. Morris, and J. E.

Forrester, for a consideration of $30,000. The three persons last named obtained a charter incorporating the plaintiffs in error as the Morris-Forrester Oil Company, and transferred all the rights purchased from Taylor and Todd to this corporation. The contract of sale between Taylor and Todd on the one hand and Forrester and L. M. and C. R. Morris on the other contained a stipulation and covenant that "it is understood and agreed by the parties hereto that the parties of the first part [Taylor and Todd] *shall not enter into* the same kind or similar business anywhere within a radius of 20 miles of Atlanta, Georgia." It appears from the evidence introduced at the hearing before the judge of the superior court, that, despite this covenant, there was erected on the lot adjoining that on which the business purchased by the Morris-Forrester Oil Company was conducted, a place of business substantially identical with that purchased by them and carrying on practically the same business of dispensing gasoline and motor oils, the sales of which are in charge of O. F. Taylor, one of the sellers of the property purchased by Morris and Forrester above referred to. The only apparent difference between the two concerns is that the one conducted by Taylor has perhaps the newer and later approved appliances. Morris-Forrester Oil Company filed a petition for injunction and other relief, and alleged a violation of the contract and a breach of the covenant above quoted. Taylor filed an answer; and upon the hearing the judge refused the injunction. The defendant insists that this judgment should be affirmed, for the reason that it was the legitimate result of the exercise of the court's discretion upon conflicting evidence, and that the rule is well settled that upon conflicting evidence the discretion of the trial judge in granting or refusing an injunction will not be disturbed. The plaintiff insists that no occasion arose for the consideration of that portion of the evidence wherein there is a conflict, for the reason that the covenant itself fixes the liability of the defendant, in view of the uncontradicted evidence as to the fact that the business in which Taylor was engaged was the same as that which he had covenanted not to enter; and relies upon the ruling of this court in *Jefferson* v. *Markert,* 112 *Ga.* 498 (37 S. E. 758).

Under section 4253 of the Civil Code (1910), primarily contracts in restraint of trade are void. It is very evident in this case from

the statement of the tangible assets purchased from Taylor and Todd that the main consideration for the payment of the sum of $30,000 to them was to altogether remove active and effective competition, and that the acquisition of the tangible property was altogether subsidiary to this leading object. Objection was made at the hearing to the introduction of certain portions of the defendant's answer as evidence. These excerpts from the answer were introduced for the purpose of showing that it was understood and agreed that Taylor should be permitted as an individual to continue the sale of gasoline in car lots, and that it was known by L. M. Morris, who made the bargain for himself and associates, that Taylor understood at the time he signed the writing that he would not be required to cease the business of selling gasoline and motor oils in the territory in which he had previously operated. If the contract is ambiguous, the learned trial judge did not err in overruling the objection and in admitting the testimony; for ambiguities in writings may be explained by parol; and it is provided in § 4267 of the Civil Code (1910) that where a provision of a contract is understood in a certain sense by one of the parties thereto, and the opposite party knows the construction thus placed upon it, that construction shall be held as the true meaning, when there has been no dissent nor objection, but to which the opposite party has silently assented. If it be conceded that the phrase "enter into a business" is ambiguous, the trial judge, for the reason just stated, properly admitted the testimony to which objection was made, and thereafter upon conflicting evidence had the right to exercise a discretion in either granting or refusing an injunction. It is therefore apparent that this case turns upon whether the wording of the covenant is ambiguous. In other words, the correctness of the court's ruling must be determined by the meaning of the words "enter into," as related to the particular business to which the contract relates. What is the business? The sale of gasoline and motor oils. It is insisted that the term "enter into" necessarily involves the concept of proprietorship or proprietory interest in the subject-matter; but can there not be an entrance into a business in a much broader sense? Might not one be said to enter into a calling, business, or occupation even as an apprentice, without any financial interest whatever, and merely for the purpose of learning the particular trade or occupation or

calling? Is the word "business" confined to a denomination of those who have capital invested? Are there not numbers of callings, such as the business of an insurance agent or a sewing-machine agent, or the business of selling machinery, or the business of buying cotton on a commission, where those who follow the business as a matter of practice have no capital of their own at stake? Taylor covenanted not to "enter into the same kind or similar business anywhere within a radius of 20 miles of Atlanta, Georgia." Under the proof he is in the same kind of business on the adjoining lot where he conducted the same business prior to the covenant, but he avers that he has not violated the covenant because he is a mere employee of the Continental Oil Company, which owns the business in which he has no financial interest. The term "enter into" is defined "to form a part of; constitute an element or ingredient in; to take an interest in; to join in." Standard Dictionary. Among the definitions of the word "enter" given by Webster's Dictionary are, "to make a beginning in; to start; take up;" and "enter into" is defined, "make a beginning; engage; start; as, to enter into business; to make one's self a party; to form a constituent part; to become a part or partaker; share." Nor does the archaic definition of the words "enter into," used in John 4:38, differ materially in sense when the term is used with reference to business in the verse cited. The words "enter into" are used to express the thought that those who are entered into the labors of another reap the benefits without performing all of the services of those to whom they succeeded.

Judging the language used in the covenant by the definitions which we have quoted as applicable to business relations, it appears to us that Taylor had covenanted not to become a constituent part, sharer in, partaker of, or engage in or reap the benefits from the sale of gasoline and oil within 20 miles of Atlanta; and the fact that he was engaged as an employee of the Continental Oil Company would be no less a violation of the covenant than if he conducted the business in his own name. The purpose of the covenant was to remove from competition with the Morris-Forrester Oil Company the popularity, the intelligence, the personal acquaintanceship, and the business experience of O. F. Taylor, whether as a purchaser or a salesman of oil; and under existing

conditions this competition was much more to be feared in the sale of the product than in the purchase of gasoline and oil. The fact that Mr. Howell is the president of the company, and has the general supervisory control of all of its affairs, does not affect the fact that the chief business and profit in the business of selling gasoline is in the sale and capacity or ability to sell on the part of one salesman as competing with another. In our opinion a contract not to enter into the wholesale gasoline and motor-oil business or the same kind or similar business is unambiguous, and excludes on the part of one who makes such a covenant any participation or sharing or taking a part in aid of such sales; and in view of this ruling the learned trial judge erred in refusing an injunction.     *Judgment reversed. All the Justices concur.*