SMITH *et al. v.* DAVIDSON.

No. 14918.   SEPTEMBER 8, 1944.

*Randall Evans Jr.,* and *Jack D. Evans,* for plaintiffs.
*Stevens & Stevens,* for defendant.

GRICE, Justice.  ■  The alleged contract to sell and purchase was oral. Was it for goods, wares, and merchandise to the amount of $50 or more? It is averred in the petition that the subject-matter of the sale was "a pressing club," and "that said pressing club consists of two Hoffman presses; one Tantex press; one 10-horse boiler; one G. E. washing machine; one Hoffman dry terminal; one Butler cabinet; one Hoffman dry cleaner; one Hoffman extractor; one Butler filterer; two fans, one upright and one suction; one tailoring machine; several hat blocks; all fixtures located in the building at No. — Railroad Street in the City of Thomson, Georgia, being a complete dry-cleaning plant; and the good will of J. A. Davidson and of said pressing club; and the established business and patronage and reputation of said pressing club." It will be here noted that the pressing club is alleged to consist of certain articles of personalty "and the good will of J. A. Davidson and of said pressing club; and the established business and patronage and reputation of said pressing club."

The specific tangible articles here mentioned are included within the terms, "goods, wares, and merchandise," as those words are used in the statute of frauds. Many courts have held that those words mean all movable property that is ordinarily bought and sold. See 18 Words & Phrases (Perm. ed.), pp. 541 et seq. But we are aware of no decision holding that by the use of the words "goods, wares, and merchandise," the statute contemplates only goods that are usually sold on the market, and that may be easily sold and resold. *Cason* v. *Cheely*, 6 *Ga.* 554, relied on by counsel for the plaintiff in error, does not so rule. There the subject-matter was the whole of a crop of cotton for the year 1846. The contract was made on September 23, 1846. A reading of the opinion, which was by Judge Nisbet, shows that he was answering the argument that, first, the contract was executory, and, as was urged, therefore without the statute; and second, that the contract was in reality one for labor. The court ruled that such contracts are not excluded from the operation of the statute merely because they are executory; that contracts for goods not in esse at the time and of a peculiar character so as to be unsuited to the general market, to be made by the work and labor and with the material of the vendor, at the instance of the purchaser, are not within the statute of frauds; and that cotton prepared for market was goods

and merchandise within the meaning of the statute. Bearing in mind the foregoing, the language of the learned judge that "cotton is, beyond any other merchandise in this country, salable in the general market and in prompt demand," does not have the significance which counsel apparently attaches to it. In *Walker* v. *Supple,* 54 *Ga.* 178, it was held that a contract to purchase an account for $50 or more is within the reason and spirit of the statute of frauds and must be in writing. In *Hightower* v. *Ansley,* 126 *Ga.* 8 (54 S. E. 939, 7 Ann. Cas. 927), the court ruled that a contract to purchase shares of stock in an incorporated company had to be in writing, and in the opinion it was said: "Besides, it is more in accord with the spirit of the law that personal property which is capable of assignment or transfer should not be distinguished from goods, wares, and merchandise, as taken in their literal sense. If the terms 'goods, wares, and merchandise,' are given their most limited significance, it would exclude, without reason, from the operation of the statute a large class of personal property."

There was also purchased and sold, however, the good will of the business, all for the lump sum of $3600. Does the inclusion of "good will" in the sale take the transaction without the statute of frauds? It has been held that "good will," as the term is used when speaking of the good will of a business, is not corporeal property; but it has been often defined as advantage or benefit acquired by an establishment, beyond the mere value of property employed in a business, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or for other reasons. See the many cases collected in 18 Words and Phrases (Perm. ed.), pp. 555 et seq. A like definition may be found in the opinion of this court in *Armstrong* v. *Atlantic Ice & Coal Corp.,* 141 *Ga.* 464 (81 S. E. 212). It is difficult to conceive of the good will of a business apart from the tangible properties used in such business, or as a thing of form and substance. It is more like a spirit that hovers over the physical, a sort of atmosphere that surrounds the whole; the aroma that springs from the conduct of the business; the favorable hue or reflection which the trade has become accustomed to associate with a particular location, or under a certain name. As fragrance may add loveliness to the

flower from which it emanates, so good will may add value to the physical from which it springs; but could it be said to have a value apart from the corporeal things with which it is associated? It will be conceded that good will may possess some of the attributes of property which will be protected by the courts, and a valid covenant with respect thereto may be enforced. Compare *Morris-Forrester Oil Co.* v. *Taylor,* 158 *Ga.* 201 (122 S. E. 680); *Valdosta Drug Co.* v. *Mashburn Drug Co.,* 183 *Ga.* 471 (188 S. E. 694). See also 3 Williston on Contracts, § 1640. In *Shaw* v. *Jones,* 133 *Ga.* 446 (66 S. E. 240), this court passed on an exception to a charge as to the measure of damages for breach of a contract for the sale of the good will of a business, on the ground that the correct measure was not given. None of those rulings however are decisions of the question immediately before us.

There is no allegation that the "good will" had a separate value, and it is not to be presumed that in the minds of the parties it was so regarded, the petition being construed most strongly against the pleader. The price was fixed on the tangible properties, whose value may have been increased by reason of the good will attached thereto.

This court in *Porter* v. *Gorman,* 65 *Ga.* 11, used the following language: "Good will is defined by Lord Eldon to be 'nothing more than the probability that the old customers will resort to the old place.' No subsequent definition has changed in any material respect this rendition, and all the writers seem to have recognized and adopted it. See Bouvier's Law Dictionary, title 'Good-will.'" One court has said that the good will of a business is not the business, but one result springing out of it. McGowan *v.* Griffin, 69 Vt. 168 (37 Atl. 298). Others refer to it as meaning the advantage or benefit which is acquired by an establishment beyond the mere value of its funds and property employed therein. Still others say that it means the favor which the management wins from the public. Elsewhere it is said to be an attribute of the business., 24 Am. Jur. 807, § 10. See the various references to these holdings in 18 Words & Phrases (Perm. ed.), pp. 555 et seq. It appears, however, that some courts have said that a sale of good will is not necessarily accompanied by the tangible assets of a business. 24 Am. Jur. 809, § 12; and the annotations in 3 L. R. A. 254, and 91 A. L. R. 985. We need not, however,

enter that field of discussion. The case before us calls for a decision as to whether an oral contract for the sale of certain items of personalty, comprising a certain business at a certain place, and the good will of the owner, all for the sum of $3600, is a violation of the above-referred-to provision of the statute of frauds. In discussing the nature and incidents of good will, in 24 Am. Jur. 805, § 4, it is said: "However, good will is not susceptible of separation from, or being disposed of independently of, that in which it adheres—namely, the business or the assets thereof. Consequently, it can have no existence as property in and of itself, as a separate and distinct entity, but only as an incident of a continuing business having locality or name. Good will has been held to be transmissible by will, but in this connection it should be remembered that it is not separable from other assets of the business."

The added words, "and the established business and patronage and reputation of said pressing club," do not enlarge the meaning of "good will." Whether they mean an advantage, or benefit, or favor; or a probability of continued patronage; or merely the best wishes of the former owner; or are to be regarded as signifying a mere incident adhering to the value of the physical properties of a going concern—we are satisfied, and so rule, that when there is an oral contract to sell for a lump sum of $3600 what is referred to as a business, consisting of certain articles of personalty used therein, which are definitely described, the addition of the words, "and the good will of [the owner]," does not relieve the transaction of its invalidity when attacked on the ground that it is invalid under the statute of frauds, being a contract for the sale of goods, wares, and merchandise to the amount of $50 or more. Under the prior decisions of this court, hereinbefore referred to, the meaning of the words, "goods, wares, and merchandise," is not so restricted as to include only tangible articles.

■ The plaintiffs in error rely upon part performance, and for that reason urge that the Code, § 20-402, is not in their way. The petition alleges that one of the plaintiffs, Mrs. Smith, had a lucrative position with The Thomson Company, and at the suggestion of the defendant she gave that up, in order to consummate the trade a few days later, and as a result, she is now out of employment. It is also alleged that the other plaintiff ordered

and paid for more than $100 worth of equipment, under the direction of the defendant, who told Smith that the latter would need these in the new business. The part performance with which the statute deals is "part performance of the contract." *Neely* v. *Sheppard,* 185 *Ga.* 771 (196 S. E. 452). The doing of an independent thing, even though the act would not have been but for the contract, is not sufficient. *Graham* v. *Theis,* 47 *Ga.* 479; *Lane* v. *Lodge,* 139 *Ga.* 93 (2) (76 S. E. 874); *Giradot* v. *Giradot,* 172 *Ga.* 230 (157 S. E. 282); *Taylor* v. *Boles,* 191 *Ga.* 591, 599 (13 S. E. 2d, 352); *Lamons* v. *Good Foods Inc.,* 195 *Ga.* 475 (24 S. E. 2d, 678). The amended petition did not allege any fact to show that there had been any part performance of the contract. ∕

We do not overlook the fact that the petition as amended contains an allegation that all the acts alleged to have been done by the plaintiffs between March 3 and March 9, 1944, were done in pursuance of and as part of the oral agreement and contract entered into between the plaintiffs and the defendant. The acts here referred to are mentioned above, to wit, that one of the plaintiffs at the suggestion of the defendant gave up a lucrative position, and that the other plaintiff ordered certain equipment under the direction of the defendant. To allege that these were part of the oral agreement to purchase, if such be the purpose of the amendment, is to allege a conclusion, and an unsound conclusion. The oral agreement set out in the petition was to purchase, on March 9, 1944, for the sum of $3600, the properties mentioned. That these other acts would not have been done but for the contract, may be true, but it can not be true that they were a part of the contract to purchase. The plaintiffs on their part contracted to pay the defendant $3600. The defendant on his part contracted, on that being done, to sell certain property to them, and to deliver possession thereof on March 9, 1944. None of the acts hereinbefore referred to was any part performance of the promise to pay the defendant the $3600, and an allegation to that effect can not so convert it. The demurrer was properly sustained. *Judgment affirmed. All the Justices concur.*