DURYEA et al. v. NATIONAL STARCH-MANUF'G CO.

(Circuit Court of Appeals, Second Circuit. February 23, 1897.)

TRADE-NAMES—UNFAIR COMPETITION.

One Duryea and his brothers were the controlling members of the Glen Cove Manufacturing Company, which for a long time made and sold starch in packages having thereon, in prominent letters, "Duryea's Starch." A picture of the manufacturing buildings, together with the name of the corporation, also appeared on the packages, and the starch and the corporation became identified with each other. Thereafter the business was sold to another corporation, which continued the use of the words and pictures with its own name. Duryea, having subsequently withdrawn from the company, furnished capital to his sons, who thereafter procured other starch to be made for them, and sold it as "Starch Prepared by Duryea & Co.," etc., without any imitation of labels or packages. *Held*, that this was a proper use by Duryea and his sons of their own name, and could not be enjoined.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit in equity by the National Starch-Manufacturing Company against Harry H. Duryea and others to enjoin the use of the word "Duryea & Co." in connection with starch sold by defendants. The circuit court granted an injunction pendente lite, and defendants appealed.

Elihu Root and Francis Forbes, for complainant.

Esek Cowen, for defendants.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges, and BROWN, District Judge.

SHIPMAN, Circuit Judge. In 1855 Hiram Duryea and his brothers became the controlling officers and members of a corporation located at Glen Cove, Long Island, for the manufacture of edible and laundry starch, which continued in active business, under the control of the Duryeas, until 1890, and was known during the latter part of its history as the Glen Cove Manufacturing Company. The products of its extensive factories acquired a high and well-known reputation. Upon its packages the name "Duryea's Starch" was always prominently printed, generally in connection with adjectives denoting its quality, as "Duryea's Superior Starch," or "Duryea's Improved Corn Starch"; and thus "Duryea's Starch" became the name by which its products were universally known in the wholesale and retail trade, and by which they were described in price lists and by consumers. A picture of the buildings of the corporation at Glen Cove, and the name of the Glen Cove Manufacturing Company, as the manufacturer of the starch, also appeared upon the package, so that "Duryea's Starch" and the corporation became identified with each other. Hiram Duryea had charge of the general management of the sale of the company's products from about 1857 to 1890, when its entire property, trade-marks, and good will were sold to the complainant, the National Starch Manufacturing Company, of which he became the first president. He also

entered into an agreement with the new company that during the term of five years from April 12, 1890, he would not permit or suffer his name to be used or employed in carrying on or in connection with the business of manufacturing or selling starch in any one of the states which were specified in the contract, and which were, in the main, the Northern states of this country. The complainant continued to manufacture at Glen Cove, and its packages from that factory have been and are presented to the public in the same dress, and with the same nomenclature and description, except the announcement that they are manufactured by the complainant, and the product continues to be popularly known as "Duryea's Starch." On November 1, 1895, two sons of Hiram Duryea formed a co-partnership with two former prominent salesmen of the Glen Cove Company and also of the complainant, under the name of Duryea & Co., for the sale of starch. Hiram Duryea furnished the capital of the firm, which made a contract with the Sioux City Starch Company, of Iowa, to furnish it, for three years, starch, according to the samples agreed upon by the contracting parties. This starch the firm of Duryea & Co. has placed upon the market in packages which prominently display the words "Laundry Starch Prepared by Duryea & Co.," and "Pure Corn Flour Prepared by Duryea & Co.," and have no other symbols of the Glen Cove starch, while its labels are strikingly different. These articles have been vigorously pressed upon the market in New York City and elsewhere at a price below that of the complainant's starch, and have gained a place in retail stores, in some of which they have been sold as "Duryea's Starch." Before the formation of the firm, its members were not manufacturers, but they are said to have successfully devoted time in Sioux City to improvements upon the Sioux City Company's former product. Upon the complainant's motion, an injunction pendente lite against the use of the words "Prepared by Duryea & Co." or "Duryea & Co." was granted, and was suspended during the appeal therefrom. The circuit judge was of opinion that the case was a close one, but thought that the affidavits apparently made out a case of an intentional and unnecessary use of a defendant's name to deprive the complainant of a portion of its trade.

It cannot be denied that, by continuous and rightful use for 40 years, the name of "Duryea's Starch" had become identified with its "source of manufacture," and that an attempt by persons of the name of "Duryea," or of any other name, to put upon the market their own product, under the name of "Duryea's Starch," could be suppressed. Inasmuch as the defendants have not called their starch by this well-known name, and have not assimilated the labels upon their packages to those long used by the manufacturers at Glen Cove, the question is whether the defendants have made such an unnecessary and unfair use of the name of "Duryea" as to deserve the unfavorable criticism of a court of equity. In the recent case of Singer Manuf'g Co. v. June Manuf'g Co., 163 U. S. 169, 1ᵣ Sup. Ct. 1002, it is declared by the supreme court to be a well-settled doctrine that:

"Every one has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right are subjected is damnum absque injuria. But, although he may thus use his name, he cannot resort to any artifice or to any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name. Where the name is one which has previously thereto come to indicate the source of manufacture of particular devices, the use of such name by another, unaccompanied with any precaution or indication, in itself amounts to an artifice calculated to produce the deception alluded to in the foregoing adjudications."

If the new firm could properly adopt the name of "Duryea & Co.," and if sufficient precautions were taken to show the public that the manufacture is not that of the successor of the Glen Cove Manufacturing Company, the complainant is not entitled to an injunction. The firm consisted of four persons, two of whom were named "Duryea," and all of whom were without capital, which was furnished by the father of the two Duryeas, and who had now a right to permit his name to be used honestly in the starch business. Under this state of facts, the firm was not dealing unfairly with the complainant in calling itself "Duryea & Co.," and in omitting to add the name of the former salesmen of the complainant. Upon the second point, whereas the complainant uses the name "Duryea Starch" and the picture of the Glen Cove factories, and said that it was the manufacturer, the defendants' packages simply assert that the starch which they contain is prepared by Duryea & Co. We think that this is a sufficient declaration of the source of the manufacture, as distinguished from the well-known source at Glen Cove, and that the labels are not objectionable, because, by reason of their marked dissimilarity from the complainant's labels, the public could not be misled. Upon the whole case, as disclosed by the affidavits, the order of injunction should be reversed, with costs.