PIGGLY WIGGLY CORPORATION v. SAUNDERS.

(District Court, W. D. Tennessee, W. D. March 28, 1924.)

No. 847.

I. Patents ⊂⇒202(I)—Trade-marks and trade-names and unfair competition ⊂⇒35 — Contract conveying self-serving grocery store, inventions, trade-marks, etc., construed.

Conveyance, by inventor of self-serving grocery store system, of "my business, and the good will belonging thereto, established and built up by me under my own name and the name 'Piggly Wiggly,' comprising the establishing, operating, and the licensing of agents and subsidiary concerns to operate, Piggly Wiggly stores," trade-marks, patents, copyrights, and

"inventions which I have made or may make hereafter in instrumentalities relating to and for the purpose of" such business, precludes seller from using future inventions in self-serving grocery store business, since contract conveyed fruits of his inventive genius as future might reveal them, but does not preclude him from using methods, practices, and store arrangements in common use in self-serving stores at time of conveyance, not covered by patents, trade-marks, trade-names, etc., conveyed thereby.

2. Patents ⊂⇒202(I)—Trade-marks and trade-names and unfair competition ⊂⇒35—Contract conveying business construed according to intention of parties.

In construing contract conveying business with inventions, trade-names, and copyrights incident thereto, the intention of the parties, when determined, must control.

3. Trade-marks and trade-names and unfair competition ⊂⇒I—Trade-name may be established without copyright.

Trade-name may be established without copyright.

4. Trade-marks and trade-names and unfair competition ⊂⇒I—Trade-mark not necessarily dependent on invention or discovery nor on statute.

A trade-mark does not necessarily depend on invention or discovery, nor does it necessarily derive its existence from any state or federal statute, but has long been recognized and protected by common law.

5. Trade-marks and trade-names and unfair competition ⊂⇒35—Contract held to convey right to trade-name "Piggly Wiggly."

Contract conveying "Piggly Wiggly" self-serving grocery store business, with patents, inventions, copyrights, and trade-mark rights, held to convey the trade-name "Piggly Wiggly."

6. Trade-marks and trade-names and unfair competition ⊂⇒35—Rule as to conveyance to another of right to use name stated.

One may convey to another the use of his name, but will not be held to have done so, though he has sold business, with good will, in absence of express provision in contract.

7. Trade-marks and trade-names and unfair competition ⊂⇒35—Inventor, selling "Piggly Wiggly" business, with good will, held not to have parted with right to use own name.

Contract by which inventor of grocery store self-serving system used by "Piggly Wiggly" stores conveyed business, with trade-marks, trade-names, patents, inventions, and good will, held not to have conveyed right to use his own name in business.

8. Good will ⊂⇒5—Subject to sale.

The good will of a business is a property right, and may be made the subject of purchase and sale.

9. Trade-marks and trade-names and unfair competition ⊂⇒95(I)—Rule as to granting temporary injunction in action to enjoin unfair competition stated.

The granting of a temporary injunction against unfair competition is largely discretionary with the court, and where it is made to appear that to leave the parties in statu quo would work the lesser injury until the case could be determined on the merits, a plaintiff, presenting grounds for injunction, should not be denied the temporary relief.

In Equity. Suit by the Piggly Wiggly Corporation against Clarence Saunders. Decree for plaintiff.

FitzHugh, Dixon & Osoinach, of Memphis, Tenn., for plaintiff.

Miles, Waring & Walker, G. T. Fitzhugh, and J. W. Farley, all of Memphis, Tenn., for defendant.

ROSS, District Judge. This is a proceeding instituted by plaintiff, a Delaware corporation, with its principal office in Memphis, Tenn., to enjoin the defendant, Clarence Saunders, a resident of Memphis, Tenn., from engaging in the grocery and merchandising business under certain conditions. On the 6th day of March, 1924, plaintiff filed its bill, alleging in substance:

That in 1918 defendant procured valuable patents from the United States and many foreign countries covering a system of merchandising known as the "Clarence Saunders Self-Serving Stores"; that he also obtained a copyright and trade-mark for the name "Piggly Wiggly," as the name by which said stores operating under said system were known; that such a system was put in operation over various parts of the United States; that prior to September 9, 1918, defendant had entered into license contracts with a large number of individuals and corporations in a great many cities and towns in the different states, by virtue of which grocery stores were operated using the self-serving system; that in August of 1918 defendant incorporated the business and sold stock over the United States, and that on the 9th day of September, 1918, defendant entered into a written contract with plaintiff, Piggly Wiggly Corporation, whereby he transferred to plaintiff property and rights designated as follows:

"My business, and the good will belonging thereto, established and built up by me under my own name and the name "Piggly Wiggly," comprising the establishing, operating, and the licensing of agents and subsidiary concerns to operate, Piggly Wiggly stores, and to use my trade-name, copyrights, and inventions appertaining to such stores in the operation of the business, together with the right to operate under my United States patent No. 1,242,872, dated October 19, 1917.

"My said United States letters patent No. 1,242,872.

"All licenses granted under said patent to date and all beneficial interests therein.

"All trade-mark contracts granted to agents to this date and all beneficial interest therein.

"Certain applications for other United States letters patents now pending in the United States Patent Office for me in connection with Saunders self-serving store as follows:

"No. 142,253, filed January 13, 1917, for refrigerators.

"No. 175,905, filed June 20, 1917, for design for store furniture.

"No. 175,942, filed June 20, 1917, for self-serving store.

"No. 198,134, filed October 23, 1917, for self-serving store.

"No. 202,466, filed November 17, 1917, for self-serving store.

"No. 203,503, filed December 10, 1917, for tape for adding machines.

"No. 215,508, filed February 5, 1918, for price-tagging means and method.

"Certain other applications for patents in the course of preparation and to be filed, all relating to inventions in instrumentalities for use in connection with the operation of said Piggly Wiggly stores and the business connected therewith.

"Any other inventions which I have made or may make hereafter in instrumentalities relating to and for the purpose of the business aforesaid in the United States, and will agree at the expense of the said corporation to file applications for United States patents for such inventions and to make proper agreements for the use thereof by the said corporation in connection with Saunders self-serving stores.

"Also all copyrights registered or to be registered by me for subject-matter relating to said business.

"Also all trade-mark rights, both under United States statutes and under the common law, relating to or connected with said business.

"Also all beneficial rights under any other existing contracts relating to said business which I now hold with any one.

"All of which property I will transfer and vest the title thereto in said Piggly Wiggly Corporation, to be held and enjoyed by it as fully and entirely as the same is now held and enjoyed by me.

"All of which I agree to do for and in the consideration of $550,000 and the issuance to me of 15,000 shares of no par value common stock of said corporation, which shall be received by me in full payment for said property so to be transferred, and

when so issued shall become fully paid and nonassessable.

"I have heretofore entered into a certain agreement for the manufacture of fixtures for use under said trade-mark contracts and patent license agreement with the Saunders Manufacturing Company at Jackson, Tenn., and all my rights under said contracts are to be transferred to said Piggly Wiggly Corporation and my liabilities thereunder assumed by said corporation, except my liability upon my agreement to guarantee dividends or purchase stock as set out in said certificates."

That on the 25th day of August, 1919, plaintiff purchased from the defendant certain other rights by virtue of a contract made the subject of a resolution passed by the stockholders of plaintiff, in part as follows:

"Whereas, Mr. Clarence Saunders has heretofore obtained letters patent of the United States No. 1,242,872, granted October 9, 1917, for an invention in self-serving stores, also letters patent of the United States No. 1,297,405, granted March 18, 1919, for price-tagging means, also several applications now pending in the United States Patent Office for other letters patent of the United States for other inventions of the said Clarence Saunders, all of which letters patent have been transferred to and are owned by Piggly Wiggly Corporation, and there exists a contract between the said Clarence Saunders and Piggly Wiggly Corporation for the said Clarence Saunders to make application for other letters patent of the United States, and to execute and assign to said corporation all applications for letters patent of the United States for any other or future inventions he may make in means or methods for use in the operation of self-serving stores; and

"Whereas, the said Clarence Saunders had granted to the said Piggly Wiggly Corporation the exclusive right to the use of the name 'Piggly Wiggly' and all trade-mark rights and the good will belonging thereto; and

"Whereas, said Clarence Saunders has already obtained letters patent for said invention in self-serving stores in Mexico, Spain, France, Great Britain, Australia, Canada, and Cuba, and has applications for patents pending for said invention in Argentina, Austria, Belgium, Brazil, Germany, Holland, Italy, Russia, and Sweden, and also has obtained letters patent for said invention in price-tagging means for Mexico, and has applications pending for said invention in Argentina, Australia, Belgium, Brazil, Cuba, France, Great Britain, Holland, Italy, Spain, and Sweden, and applications ready for filing in Austria, Germany, and Russia; and,

"Whereas, the said Clarence Saunders has offered and proposed to transfer the ownership of all of said foreign patents and applications for patents to the Piggly Wiggly Corporation, as well as any other or future inventions by the said Clarence Saunders in means or methods for the operation of self-serving stores and any and all patents therefor, including letters patent obtained in any other foreign countries for said inventions, or for other and future inventions in means or methods for operation of self-serving stores, and any and all patents therefor—the expense of making further applications to be borne by Piggly Wiggly Corporation upon the following terms, to wit: The payment to the said Clarence Saunders of the sum of two hundred and ten thousand dollars ($210,000) in cash, and the issuance to him of thirty-five thousand (35,000) shares of common stock of nominal or nonpar value."

That subsequent to the execution of the contract last above mentioned, and in the year 1919, the defendant obtained a charter for another corporation under the laws of the state of Virginia, known as the Piggly Wiggly Stores, Incorporated; that the stock of this corporation was sold throughout the United States, and that it operated Piggly Wiggly stores under license contracts from plaintiff, but in addition to the stores operated by this latter corporation plaintiff continued to license individuals and corporations as independent operators of such stores, the total number of the stores operated by plaintiff being 1,331, and of this number the latter corporation operates about 440; that this system covers approximately 42 states; that defendant was the president of each of the corporations from the date of their organization until on the 12th day of August, 1923, when he resigned as president of the Piggly Wiggly Stores, Incorporated, and on the 17th day of August, 1923, when he resigned as president of the Piggly Wiggly Corporation; that, just before resigning as president of plaintiff, defendant filed a bill in this court, seeking a receiver for plaintiff corporation, and that a few days thereafter plaintiff filed a bill in this court against defendant, seeking an accounting as to the expenditures of large sums of money charged to have been used in stock speculations. By subsequent plead-

ing defendant sought an accounting from plaintiff, alleging in his amended bill that he had used over $400,000 of his own funds in the stock speculations for the account of plaintiff and that he had contracted debts in an amount exceeding $1,250,000 in his own name, for which he claimed plaintiff was responsible.

The bill sets out in detail various proceedings pursuant to the litigation mentioned and then charges that on the 23d day of February, 1924, defendant filed a voluntary petition in bankruptcy in this court, and that immediately upon so doing made public a statement as follows:

"I have perfected a new system of self-serving merchandising, which I will patent, that will be as far ahead of Piggly Wiggly as Piggly Wiggly was ahead of former methods. I will soon have a business bigger than Piggly Wiggly ever was or ever will be. I shall start with a new chain of stores that will prove just as big a success as my first creation—Piggly Wiggly. My first store will be opened in Memphis, and I shall make Memphis the headquarters of another national chain of stores."

Plaintiff further charges upon information that defendant had publicly stated that he expected to organize a corporation for the purpose of selling stock to the amount of 10,000 shares, at $50 per share, out of a total of 50,000 shares of no par value stock, and that his object was to destroy the business of plaintiff. It is further alleged that the name of plaintiff has become so associated with Piggly Wiggly and the Piggly Wiggly system of self-serving stores and the Clarence Saunders system of self-serving stores as that the mention of one was the equivalent of the mention of either of the others; that he was proposing to open a store under the name of "Clarence Saunders Stores System," on the 7th day of March, 1924, in the city of Memphis, and that he had painted on said store the following:

"A New Invention—A New Store Originated by Clarence Saunders to Open Here March 7, 1924."

It was charged in the bill that the interior arrangement of the store proposed to be opened was practically identical with the arrangement of Piggly Wiggly stores operating by virtue of the patents above mentioned under lease contracts, and that defendant, as plaintiff had been informed, had applied for patents covering the alleged new invention.

Plaintiff further sets out that defendant was undertaking to interfere with the operation of plaintiff, in that he was endeavoring to induce plaintiff's employees to desert plaintiff and become associated with defendant, and that in various ways he was undertaking to injure plaintiff in the operation of stores under its contract with defendant, and to destroy the good will which he had conveyed to plaintiff; that since and by reason of the announcement of defendant of his purpose to operate a new system of stores the stock of plaintiff had depreciated on the market, and that defendant's object was to damage plaintiff in the exercise of its rights under the contracts above mentioned, and that to permit defendant to open and operate the store in question and to carry out his announced program would work irreparable injury to plaintiff; and that plaintiff, as the purchaser from defendant of the patents, trade-marks, copyrights, and good will mentioned in the contract, was entitled to a temporary writ restraining defendant from opening or operating the store in question. The bill further sought to enjoin defendant on the ground that to permit him to operate the proposed store would be unfair competition under the contract. This bill was presented for an order for a temporary injunction in pursuance to the prayer thereof, when the matter was held in abeyance until notice could be given defendant of the relief sought under the bill.

Thereupon defendant filed an answer herein, in which he admits the execution of the contracts referred to in the bill and certain portions thereof as to the operation of the stores under such contracts and his management as president to the dates mentioned in the bill and the institution of the suits referred to, but denies the material allegations of the bill made the predicate for relief against him, and specifically denies any intention on his part to interfere with the rights of plaintiff under the contract.

The matter was heard upon the bill and answer and argument of counsel and a temporary restraining order granted. At the expiration of 10 days from the granting of this writ further hearing was had upon the bill, the amendment thereto, the answer, with its amendment, numerous affidavits and counter affidavits, a great volume of exhibits, and extended argument on the part of counsel for the respective parties; whereupon, in view of the size of the record and the multiplicity of authorities relied upon by

respective counsel, the temporary writ was continued for a further period of 10 days.

Pending the preparation of this opinion, and on the 28th day of March, 1924, defendant presented its prayer for appeal and for an order suspending the temporary writ of injunction heretofore issued, which prayer has been granted and a supersedeas ordered as to the temporary writ partially suspending the same. The reasons for so doing are herein set out, and by the order granting the appeal this opinion is made a part thereof.

The question as to the right of appeal is not here passed upon, while it would seem from the provisions of the Judicial Code, sections 263 to 266, inclusive (Comp. St. §§ 1241–1243), and section 1243a of the United States Compiled Statutes, same being 38 Statute at Large, 737, Act of Congress October 15, 1914, c. 323, § 17, courts of equity have the power to grant temporary restraining writs for a period of 10 days under the provisions of the sections cited, and for good cause to continue such restraining writ for a further period of 10 days. However, I am not unmindful of the holding in Davis et al. v. Hayden et al., 238 Fed. 734, 151 C. C. A. 584; but as the record is now presented it seems that the question can be fairly determined as to the rights of the respective parties by the appellate court.

At the hearing on March 18th above mentioned, it was admitted in open court that defendant had applied for a patent upon the arrangements of the store he was proposing to open, and under the terms of the contracts referred to herein offered to assign his rights thereunder to plaintiff, which offer was accepted upon certain conditions.

The principal contentions of plaintiff are that under the terms of the contracts defendant has conveyed to plaintiff the right to not only carry on the business specifically set out, but to the use of defendant's name, and that, while no specific covenant appears in the contracts to the contrary, yet defendant should not now be permitted to re-engage in any character of business in competition with plaintiff, and an injunction to this effect is sought.

The principal contention of defendant is that, in the absence of any express covenant on his part not to re-engage in the grocery and merchandising business under his own name, or such name as would not be an infringement of the trade-mark or copyright names assigned by him to plaintiff, he now has the right to engage in such business as he may desire, and that the terms of the contract are not broad enough to be made the grounds of any such injunctive relief as plaintiff seeks.

In argument and in briefs it would appear that counsel have assumed a wider range in this case than the real questions involved warrant. Each party is bound by the terms of the contract, and a proper construction of this contract will be determinative of the matters in issue. It is therefore essential in the outset to understand what defendant sold, and what plaintiff acquired, by virtue of the contracts made the basis of this suit.

In the first contract it is specifically and expressly stated that defendant is conveying to plaintiff (1) his business; (2) the good will belonging thereto, established and built up by him under his own name and the name Piggly Wiggly; (3) the trade-name; (4) copyrights; (5) inventions appertaining to stores which might be used in connection with the operation of the business; (6) the right to operate under defendant's United States patent No. 1,242,872, dated October 19, 1917; (7) the patent just mentioned; (8) all licenses granted under said patent and all beneficial interest therein; (9) all trade-mark contracts granted to agents and all beneficial interest therein; (10) certain applications for other United States letters patent then pending in the Patent Office in connection with "Saunders self-serving stores" (Here follows the specific mention of seven applications for patents, covering [a] refrigerators; [b] design for store furniture; [c] for self-serving store; [d] for self-serving store; [e] for self-serving store; [f] for tape for adding machines; [g] for price-tagging means and method); (11) certain other applications for patents then in the course of preparation and to be filed, relating to inventions and instrumentalities for use in connection with the Piggly Wiggly stores, and the business connected; (12) any other inventions which defendant might thereafter make in instrumentalities relating to and for the purpose of the business aforesaid in the United States; (13) all copyrights registered or to be registered for defendant for subject matter relating to said business; (14) all trade-mark rights, both under United States statutes and under the common law, relating to or connected with said business; (15) all beneficial rights held by defendant under any other existing contracts relating to the business; (16) all the rights of defendant under the terms of a contract made for the manufacture of fixtures for

use under trade-mark contracts and patent rights agreement with the Saunders Manufacturing Company of Jackson, Tenn.

The consideration set out in this contract of September 9, 1918, is the sum of $550,000 in money and 15,000 shares of no par value common stock of the corporation. Under the contract of August 25, 1919, after setting out that certain patents had been issued to defendant and affirming the execution of the prior contract, for the further consideration of $210,000 in money and 35,000 shares of common stock in the corporation, defendant conveys certain foreign patents covering Mexico, Spain, France, Great Britain, Australia, Canada, and Cuba, and applications for patents then pending in Argentina, Austria, Belgium, Brazil, Germany, Holland, Italy, Russia, and Sweden, and in addition "any other or future inventions by the said Clarence Saunders in means or methods for the operation of self-serving stores, and any and all patents therefor, including letters patent obtained in any other foreign countries for said inventions, or for other future inventions in means or methods for the operation of self-serving stores."

An analysis of these contracts readily reveals that they are indeed broad in their scope, by reason of the extensive business then being done and that contemplated, and that they are at the same time comprehensive, yet specific in the matters embraced therein.

[1] Leaving aside for the present the question of good will, it is clear that defendant has not only conveyed to plaintiff the property existing as set out in the contracts, but that he specifically and for the considerations mentioned conveyed to plaintiff the fruits of his inventive genius as the future might reveal them. This he had a right to do. By such contract he is bound. Wege v. Safe Cabinet Co., 249 Fed. 696, 161 C. C. A. 606, and authorities therein cited. As it appears from the record, the total consideration paid defendant was approximately $3,500,000, and, since defendant has received what would certainly appear to be a fair consideration, plaintiff has the right, not only to the property and property rights conveyed, but to any beneficial interest which may arise as a result of the inventions originated by defendant or put into use by him, in so far as they appertain to the business which was being conducted at the time of the sale, and which was sold by defendant to plaintiff, or which he might thereafter make. This right

1 F.(2d)—37

granted plaintiff is vouchsafed to it by the use of the broad and comprehensive terms referring to such inventions or instrumentalities as those "in means or methods," and therefore any instrumentalities, devices, or methods originated or invented by defendant, which pertain to either the general conduct of the business mentioned, or the licensing of agents, or the operation of stores, or any matters directly connected with the operation of such stores as are embraced in the terms of the contract, must be considered as having been sold by defendant to plaintiff, and whenever their existence may be made manifest plaintiff will be entitled to them, and to any beneficial interest which may result, for thus did defendant agree.

[2] In construing a contract of this nature, as in all others, the intention of the parties when determined must control. Williams v. Paine, 169 U. S. 55, 76, 18 Sup. Ct. 279, 42 L. Ed. 658; Tierman v. Jackson, 5 Pet. 580, 594, 8 L. Ed. 234; Prentice v. Duluth Storage Co., 58 Fed. 438, 7 C. C. A. 293; Marquette Cement Co. v. Oglesby Coal Co. (D. C.) 253 Fed. 107; Kentucky Coke Co. v. Keystone Gas Co., 296 Fed. 320 (Sixth Cir. decided March, 1924); 18 C. J. 252, § 198, and authorities there cited. There can be no doubt, from a reading of the contract, but that defendant not only intended to convey the matters in existence at the time of the execution of the contract specifically mentioned, but the future products of his mind in so far as they pertained to the business.

It is very strenuously argued by counsel for defendant that the word "comprising," as used in the contract of September 9, 1918, limits the property conveyed therein to the establishing, operating, and licensing of agents and subsidiary concerns to operate Piggly Wiggly stores, and to the use of the trade-names, copyrights, inventions, etc., appertaining to such stores. To so construe the contract would be to entirely overlook the language as used therein in this particular paragraph and the subsequent paragraphs, showing an intention to the contrary; that is to say, showing that it was the intention of defendant to convey whatever business he had established and built up in his own name and the name Piggly Wiggly, relative to the establishing, operating, and the licensing of agents and subsidiary concerns which should have power to operate Piggly Wiggly stores, and to use the trade-names, copyrights, inventions, etc. In addition to conveying these matters, defendant conveyed the other specific prop-

erties and rights hereinabove enumerated. In this connection it is well to consider the meaning of the word "operate," as used in connection with this business in the contract. Certainly this term embraced the entire business of conducting in all their varied branches the self-serving stores under this system, and the rights granted by defendant relative to conducting such stores did not pertain alone to such stores as were then in existence, but he intended that its rights should follow, attach to, and be enjoyed by such stores as should be subsequently established by virtue of the contract.

[3-5] It is denied in the answer of defendant that he had ever obtained any copyright or trade-mark for the name "Piggly Wiggly." It may be that no copyright for such name was ever obtained, but no copyright was necessary for the trade-name to be established. It is shown that this name was used upon all the stores operated by virtue of any license granted by defendant prior to the contract and by plaintiff subsequent thereto; that it is a name that has become generally known as designating this particular character of store, and indeed it would appear it is especially known throughout the United States, and probably in many foreign countries. A trade-mark does not necessarily depend upon invention or discovery (Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550), nor does it necessarily derive its existence from any statute, state or federal, but has long been recognized and protected by the common law (Trade-Mark Cases, supra). From the record it would appear beyond dispute that defendant had established certain trade-names, one of which was "Piggly Wiggly," and from the contract it is equally clear such trade-name was conveyed to plaintiff, with all the rights incident thereto, as expressed in the contract or necessarily therein implied.

It would therefore seem clear that up to this point plaintiff is entitled to be protected by injunction against any breach of the contract by defendant as to any of the properties and property rights above enumerated and embraced in the contracts, and to injunctive relief against the operation or attempted operation by defendant of any store or stores falling within the designation of "self-serving store," wherein defendant was proposing to use any new inventions or instrumentalities made by him or resulting as the product of his mind in any wise, directly relating to the means or methods to be used in the operation of such store or stores, for to these matters plaintiff has a superior, and in so far as defendant is concerned exclusive, right.

It appears from the record that self-serving stores have long been in existence, and had long existed prior to any invention pertaining to such system on the part of defendant. In fact it may be said to be an old and commonly used method of vending merchandise of various kinds, and, nothing else appearing, plaintiff would not be entitled to enjoin defendant from the operation of any character of self-serving store, whereby defendant used any of the methods and practices and store arrangements in common use, either at the time of the execution of the contracts mentioned or now, except such as fall within the rights under the patents, trade-names, trade-marks, etc., conveyed by defendant to plaintiff; but in so doing in no event could defendant put into use or practice any inventions of his own or new methods originated by him or inspired by him.

It remains then to be determined as to the extent to which plaintiff is entitled to relief, if any, by virtue of the good will conveyed by defendant as the term is used in the contracts.

[6, 7] Plaintiff insists that the defendant has conveyed to it the right to the use of his name as a necessary element in the trade-marks, trade-names, etc., connected with the business. While one may, if he so desire, convey to another the use of his name (Royal Baking Powder Co. v. Royal, 122 Fed. 337, 58 C. C. A. 499; Kidd v. Johnson, 100 U. S. 617, 25 L. Ed. 769; Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 28 Sup. Ct. 288, 52 L. Ed. 481, and authorities cited in these cases; Frazer v. Frazer, etc., Co., 121 Ill. 147, 13 N. E. 639, 2 Am. St. Rep. 73, and authorities cited; Goldwyn Pictures Cor. v. Goldwyn, 296 Fed. 391 [U. S. Cir. Ct. App. Sec. Cir., decided Jan. 7, 1924]), yet in the absence of an express provision in a contract so showing it would seem one will not be held to have conveyed his name or parted with the right to use it in business, even though he may have sold a business, together with the good will incident thereto. While the record abundantly discloses that defendant advertised his name constantly and most extensively in connection with the name Piggly Wiggly and the idea of self-serving stores, in fact it may be said that this was the general practice, yet it can hardly be said that it was done in such manner as that without having expressly so contracted it passed to plaintiff by the

terms of the contracts in question, or that such a provision is necessarily implied in the contract. The parties must stand upon the contract. The court will not read into the contract that which is not necessarily implied. If such was the intention of the parties it could have been made plain beyond question. However defendant's use of his name will be limited as hereinafter stated. Howe Scale Co. v. Wyckoff, Seamans, etc., 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972; Knoedler et al. v. Glaenzer, 55 Fed. 895, 5 C. C. A. 305, 20 L. R. A. 733 (U. S. C. C. A. 2), and authorities therein cited; 28 C. J. 739, note 85.

In this connection it should be borne in mind that contracting parties must act in good faith with regard to the binding effect of the contract, and that equity looks to the intent rather than to the form in construing contracts. Gibson's Suits in Chancery, § 43. A contract of this nature is a solemn covenant between the parties. Manifestly one cannot sell to another property and property rights, and at the same time retain the same, or regain the same, in the absence of some express provision entitling him so to do.

It is further insisted by plaintiff that no express covenant is necessary, in connection with the sale of the good will of a business under the terms of a contract such as is now being considered, to warrant a court in preventing one who has sold his business and the good will belonging thereto from engaging in competitive trade. Contracts involving good will have for many centuries been the subject of litigation, and throughout the whole of such period the courts have gradually grown more lenient in their views as to the rights of plaintiffs under such contracts, and now look with more favor upon obligations of this nature than ever before. Massachusetts has perhaps gone further than any other state in the Union in holding a defendant to the binding nature of a contract for the sale of good will. Rosenberg v. Adelson, 234 Mass. 488, 125 N. E. 632; Batchelder v. Batchelder, 220 Mass. 42, 107 N. E. 455; Fairfield v. Lowry, 207 Mass. 352, 93 N. E. 598; Henry Perkins Co. v. Eben Perkins et al., 246 Mass. 96, 140 N. E. 461, decided June 22, 1923; Ruggiero v. Salomone (Mass.) 142 N. E. 764, decided March 3, 1924. However it may not be an idle prophecy to say that in a not very distant future the Massachusetts rule will be largely regarded the correct construction to be placed upon contracts of this character.

An interesting case in this connection is that of Hall Mfg. Co. v. Western Steel & Iron Works, 227 Fed. 588, 142 C. C. A. 220, L. R. A. 1916C, 620. The opinion is by Judge Baker, of the Circuit Court of Appeals of the Seventh Circuit, in the course of which it is said:

"In the first reported case, that of John Dier, decided in 1415 (Year Book, 2 Hen. V, 5), covenants were held to be unenforceable, no matter how limited in time and place. Hull, J., said: 'In my opinion you might have demurred upon him, that the obligation is void, inasmuch as the condition is against the common law; and (per Dieu) if the plaintiff were here he should go to prison till he paid a fine to the king.'

"During the generations when an artisan had to pass through apprenticeship into a guild, when he was tied to his trade and place by statutes forbidding him to leave his parish under pain of pillory or prison, when if he could not stand where he was rooted he would become a public charge, it may have been right enough for the king's courts to see no public interest but the artisan's ability to pay taxes and serve the king. If, however, fifteenth century doctrines of absolutism were to govern in twentieth century conditions of democracy, a victim of a covenantor's perfidy might well prefer to settle his legal rights by the fifteenth century wager of battle. But the glory of the common law is its inherent power of growth, its adaptability to new and enlarged conditions of life, its respondence to higher standards of social and business ethics. And so during the centuries naturally there were developments and departures with respect to this ancient doctrine. It took the courts a long time to get beyond testing the validity of a restrictive covenant purely by the presence or absence of limitations. If a restraint was unlimited as to both time and place, or was unlimited as to place though not as to time, it was unenforceable; if limited as to both time and place, or if limited as to place, though not as to time, it was valid.

"But, beginning about 1830, the advent of the factory system, multifold new machines, railroads, steamships, fast mail and express service, telegraphs, telephones, wireless, trolleys, automobiles, aeroplanes, lessening space, shortening time, offering continually new and widening avenues for both labor and capital, emphasized a point of view that had been suggested in somewhat earlier times, and that is that the validity of a restrictive covenant should be tested by determining whether on the facts of the par-

ticular case the restraint is greater than is reasonably necessary for the protection of the purchaser of the business and good will. The history of the development, with its waves of progress and recession, may be traced in England and our own country, in the following cases: Dier's Case (1415) supra; Ipswich Taylor's Case (1615) 11 Coke, 53; Broad v. Jollyfe (1621) Cro. Jac. 596; Mitchell v. Reynolds (1711) 1 P. Williams, 181; Bunn v. Guy (1803) 4 East, 190; Horner v. Graves (1831) 7 Bing. 735; Whittaker v. Howe (1841) 3 Beavan, 383; Mallan v. May (1843) 11 M. & W. 653; Price v. Green (1847) 16 M. & W. 346; Tallis v. Tallis (1853) 1 El. & El. 391; Harms v. Parsons (1862) 32 Beavan, 329; Leather Cloth Co. v. Lorsont (1869) 39 L. J. Ch. 86; Hagg v. Darley (1878) 47 L. J. Ch. 567; Rousillon v. Rousillon (1880) 49 L. J. Ch. 338, 14 Ch. D. 351; Baines v. Geary (1887) 35 Ch. D. 154; Mills v. Dunham, [1891] 1 Ch. 576; Badische Anilin Und Soda Fabrik v. Schott Segner & Co., [1892] 3 Ch. 447; Nordenfelt v. Maxim-Nordenfelt Guns & Ammunition Co., [1894] App. Cas. 535, 63 L. J. Ch. 908; Dubowski & Sons v. Goldstein, [1896] 1 Q. B. 478; Underwood v. Barker, [1899] 1 Ch. 300; Haynes v. Doman, [1899] 2 Ch. 13; Lamson Pneumatic Tube Co. v. Phillips, [1904] 91 L. T. 363; Dowden & Pook, Limited, v. Pook; [1904] 1 K. B. 45; Henry Leetham & Sons, Limited, v. Johnstone-White, [1907] 1 Ch. 322; Mason v. Provident Clothing & Supply Co., Ltd., [1913] A. C. 724; Nevanas & Co. v. Walker & Foreman, [1914] 1 Ch. 413; Oregon Steam Navigation Co. v. Windsor (1873) 20 Wall. (87 U. S.) 64, 22 L. Ed. 315; Diamond Match Co. v. Roeber (1887) 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; Fowle v. Park (1888) 131 U. S. 88, 9 Sup. Ct. 658, 33 L. Ed. 67; Gibbs v. Consolidated Gas Co. of Baltimore (1888) 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979; Carter v. Alling (C. C. 1890) 43 Fed. 208; United States Chemical Co. v. Provident Chemical Co. (C. C. 1894) 64 Fed. 946; Harrison v. Glucose Sugar Refining Co. (1902) 116 Fed. 304, 53 C. C. A. 484, 58 L. R. A. 915; National Enameling & Stamping Co. v. Haberman (C. C. 1903) 120 Fed. 415; Knapp v. S. Jarvis Adams Co. (1905) 135 Fed. 1008, 70 C. C. A. 536; Prame v. Ferrell (1909) 166 Fed. 702, 92 C. C. A. 374; Marshal Engine Co. v. New Marshall Engine Co. (1909) 203 Mass. 410, 89 N. E. 548."

[8] It has become settled that the good will of a business is considered as a property right. Metropolitan National Bank v. St. Louis Despatch Co., 149 U. S. 436, 13 Sup. Ct. 944, 37 L. Ed. 799; Coca-Cola Bottling Co. v. Coca-Cola (D. C.) 269 Fed. 796; and the long list of authorities cited in 28 C. J. p. 729, under note 2, and same authority, p. 737, note 64. Since, therefore, good will is property, it is equally clear and now well settled that it may not only be made the subject of purchase and sale, but that as a property right any contract conveying it should be enforced. Metropolitan Natl. Bk. v. St. Louis Despatch Co., supra; Howard v. Taylor, 90 Ala. 241, 8 South. 36, Bell v. Ellis, 33 Cal. 620; Donleavey v. Johnston, 24 Cal. App. 319, 141 Pac. 229; Armstrong v. Atlantic Ice Corpn. 141 Ga. 464, 81 S. E. 212; Douthart v. Logan, 86 Ill. App. 294; Millspaugh Laundry v. Sioux City First Nat. Bank, 120 Iowa, 1, 94 N. W. 262; Smith v. Smith, 51 La. Ann. 72, 24 South. 618; Brown v. Benzinger, 118 Md. 29, 80 Atl. 79, Ann. Cas. 1914B, 582; Sessinghaus Milling Co. v. Hanebrink, 247 Mo. 212, 152 S. W. 354, Ann. Cas. 1914B, 875; Haverly v. Elliot, 39 Neb. 201, 57 N. W. 1010; Boon v. Moss, 70 N. Y. 465; Faust v. Rohr, 166 N. C. 187, 81 S. E. 1096; Morgan v. Perhamus, 36 Ohio St. 522, 38 Am. Rep. 607; Bradford v. Montgomery Furn. Co., 115 Tenn. 610, 92 S. W. 1104, 9 L. R. A. (N. S.) 979; Coca-Cola v. Coca-Cola, supra; S. F. Myers Co. v. Tuttle (C. C.) 183 Fed. 235; Washburn v. National Wall Paper Co., 81 Fed. 17, 26 C. C. A. 312; Moorehead v. Hyde, 38 Iowa, 382.

It has been variously defined, but perhaps one of the best definitions is that given in Story on Partnership, § 99, as quoted by Chief Justice Fuller in Metropolitan Nat. Bk. v. St. Louis Despatch Co., supra, at page 446 (13 Sup. Ct. 948), wherein it is said to be: "The advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessity, or even from ancient partialities or prejudices." However it may be defined, defendant conveyed to plaintiff the good will pertaining to the business sold as embraced in the contracts. There appears no express covenant obligating de-

fendant not to engage in business in competition to plaintiff, and the question now is: To what extent is defendant bound by the conveyance of the good will?

The rule in Tennessee is at great variance with the Massachusetts rule for in this state it is held: "Upon a sale of the good will of a business, without more, the selling party is not precluded from setting up a precisely similar business at another business stand in the same city, or even in the vicinity. If the purchaser desired to forestall such a step, he must expressly stipulate against it in the contract." Fine v. Lawless, 139 Tenn. 167, 201 S. W. 160, L. R. A. 1918C, 1045. While under the Massachusetts rule a sale of good will precludes the vendor thereof from again establishing himself in competition to the business sold, though no express contract to that effect may appear, as will be seen from a review of the authorities above cited from this latter state.

Between the two rules mentioned the weight of authority seems to be that, in the absence of an express contract not to re-engage in business, the vendor of a business and the good will thereof is not precluded from again engaging in competitive trade, provided he shall do no wrongful thing or be guilty of no wrongful intentional act to seek to draw from the old business its customers, or shall not engage in such business as that the vending of its wares or merchandise would fall within the rule governing unfair competition. Knoedler v. Glaenzer, supra, and authorities therein cited.

To undertake to here review all the authorities, more than 100 in number, counsel for the respective parties have cited, would be a well-nigh impossible task. All which have been cited that were available have been considered. Many of these cases are but remotely, if at all, in point on the proposition cited, and many of them are but cumulative as to questions well settled. However, there is appended hereto a note containing some of the cases, other than those above cited, which have been reviewed and considered in the determination of the questions herein involved, and I shall content myself with merely citing them.[1]

[9] The pleadings have been set out at some length in this opinion for the reason that based thereon the temporary writ of injunction was granted. The propriety of granting this writ in the first instance would not only appear from the pleadings, but from the admission of defendant that the apparatus intended for use in the store which he proposed to open had been made the basis for an application for a patent, and would certainly and clearly fall within the express terms of the contract. Furthermore, as held by the Circuit Court of Appeals, Second Circuit, in Maison Dorin Société Anonyme v. Arnold et al., 296 Fed. 387, decided Jan. 7, 1924, the granting of a temporary injunction in a case of this character is one largely discretionary with the court, and where it is made to appear that to leave the parties in statu quo would work the lesser injury until the case could be determined upon the merits, a plaintiff

[1] Vonderbank v. Schmidt, 44 La. Ann. 264, 10 South. 616, 15 L. R. A. 462, 32 Am. St. Rep. 336; Knoedler v. Boussod (C. C.) 47 Fed. 645; People v. Roberts, 159 N. Y. 70, 53 N. E. 685, 45 L. R. A. 126; Kramer v. Old, 119 N. C. 1, 25 S. E. 813, 34 L. R. A. 389, 56 Am. St. Rep. 650; Siegel v. Marcus, 18 N. D. 214, 119 N. W 358, 20 L. R. A. (N. S.) 769; Angier v. Webber, 14 Allen (Mass.) 211, 92 Am. Dec. 748; Foss v. Roby, 195 Mass. 292, 81 N. E.

199, 10 L. R. A. (N. S.) 1200, 11 Ann. Cas. 571; Ranft v. Reimers, 200 Ill. 386, 65 N. E. 720, 60 L. R. A. 291; Williams v. Farrand, 88 Mich. 473, 50 N. W. 446, 14 L. R. A. 161; Lawrence v. Printing Co. (C. C.) 90 Fed. 24; Hitchcock v. Anthony, 83 Fed. 779, 28 C. C. A. 80; Washburn v. Paper Co., 81 Fed. 17, 26 C. C. A. 312; Brown Chemical Co. v. Myer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Elgin National Watch Co. v. Ill., etc., Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Saxlehner v. Eisner, etc., Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; Goodyear, etc., Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535; Mfg. Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993; Camden v. Stuart, 144 U. S. 104, 12 Sup. Ct. 585, 36 L. Ed. 363; Cowan v. Fairbrother, 118 N. C. 406, 24 S. E. 212, 32 L. R. A. 829, 54 Am. St. Rep. 733; Wilmer v. Thomas, 74 Md. 485, 22 Atl. 403, 13 L. R. A. 380; Le Page Co. v. Russia Cement Co., 51 Fed. 941, 2 C. C. A. 555, 17 L. R. A. 354; Guth Chocolate Co. v. Guth (D. C.) 215 Fed. 750, Id., 224 Fed. 932, 140 C. C. A. 410; Jackson v. Byrnes, 103 Tenn. 700, 54 S. W. 984; Fish Bros. Wagon Co. v. La Belle Wagon Works, 82 Wis. 546, 52 N. W. 599, 16 L. R. A. 453, 33 Am. St. Rep. 72; Hilton v. Hilton, 89 N. J. Eq. 182, 104 Atl. 375, L. R. A. 1918F, 1174; De Voe Snuff Co. v. Wolff, 206 Fed. 420, 124 C. C. A. 302; Merriam v. Saalfield, 198 Fed. 375, 117 C. C. A. 245; Herring v. Hall, 208 U. S. 559, 28 Sup. Ct. 350, 52 L. Ed. 616; Davids v. Davids, 233 U. S. 471, 34 Sup. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322; Duryea v. National Starch Mfg. Co., 79 Fed. 651, 25 C. C. A. 139; Thompson v. Hubbard, 131 U. S. 123, 9 Sup. Ct. 710, 33 L. Ed. 76; Keller v. Strauss et al. (C. C.) 88 Fed. 517; Lovell Mfg. Co. v. Automatic Wringer Co. (C. C.) 124 Fed. 971; Goodwin v. Camp, 295 Fed. 785 (U. S. Cir. Ct. of Appeals, 6th Cir., decided Feb. 12, 1924); Yellow Cab Mfg. Co. v. Checker Cab Mfg. Corp'n (N. Y. Supreme Court, decided Nov. 28, 1923); Goldwyn Pictures Corp'n v. Goldwyn (U. S. Dist. Court, S. D. N. Y.) decided Oct. 16, 1923 (see opinion of Circuit Court of Appeals 296 Fed. 391), Abramson v. Abramson (N. Y. Sup. Ct. decided Sept. 19, 1923).

presenting grounds for injunction should not be denied the temporary relief. See authorities cited by this case.

The question presented by plaintiff as to the proposed operation of the store by defendant being one of unfair competition would seem premature, and would be a question to be determined from the facts as they might develop in any attempt on the part of defendant to sell merchandise which would fall within the rule governing unfair competition, or from the operation of a store justifying the application of such a rule.

It appears clearly from the record that defendant, both prior to the execution of the contracts in question and since that time, while he was acting as president of the corporations involved, lent his name extensively in connection with the business. That he so connected his name with the name "Piggly Wiggly" and with the Piggly Wiggly system of self-serving stores and the Saunders system of self-serving stores as to fix his name in the minds of the public as practically necessarily connected therewith as the originator of such systems and the methods followed in their operation is so evident from a consideration of the record that it stands as a fact hardly admitting of dispute. Furthermore, the voluminous advertisements and writings put forth by defendant, as they appear in the record since the litigation mentioned between him and plaintiff prior to the institution of this suit, evidences considerable animus on defendant's part toward plaintiff and those connected therewith, and a decided disposition on the part of defendant to injure, if not to destroy, the business of plaintiff. And in view of all the facts appearing in the record it would not be just to permit the defendant to use such a system of stores, wherein his name would be connected in such manner as to lead the public to believe that it was either the old Piggly Wiggly system, or the old Saunders self-serving system, or any new system originated by Saunders of a kindred character. Having contracted with the plaintiff for such new inventions as defendant might originate pertaining to such systems, it does not remain with defendant to determine whether they are or are not patentable, or whether they are or would be beneficial interests or of material value to plaintiff, whatever they may be, if of such nature plaintiff, under the contract, would be entitled to them.

From the foregoing it therefore follows that plaintiff is entitled to restrain the defendant from opening, operating, or conducting any character of store or stores wherein he may seek to use any of the articles, instrumentalities, means, or methods embraced in the express terms of the contracts made the basis of this suit, in use in connection with or appertaining to Piggly Wiggly stores; from using in any store or stores any new inventions or new instrumentalities, or new means or methods, the product of the intellect of defendant, made by him or by any other person for him, which fall within and are embraced by the terms of said contracts, to which plaintiff is by such contracts entitled, whether the same shall relate to the exterior or interior arrangement of such store or stores, or to the means or methods used in the operation thereof, or to so use his name in connection with any such store or stores as to lead the public to believe that it is the old Piggly Wiggly system of self-serving stores originated by defendant, or the Clarence Saunders system of self-serving stores as referred to in the contract. However, the writ should not prohibit defendant from engaging in the mercantile business, or from using self-serving stores, or self-serving methods in connection with such stores, such as were in use at the time of the execution of said contracts, and which do not fall within the scope of any of the patents, inventions, trade-names, trade-marks, instrumentalities, means, or methods conveyed to plaintiff by defendant by said contracts, nor should it prohibit defendant from the use of his own name in the operation of any such store or stores, provided it is used under the restrictions above stated. The temporary writ will be thus modified pending the appeal.

The costs of the proceeding to the present time should be adjudged against defendant.