## CORNMAN v. GRAEBER STRINGING & WIRING MACH. CO. et al.

No. 4536.

District Court, E. D. Pennsylvania.

Aug. 27, 1946.

Benjamin Ludlow, of Philadelphia, Pa., and Francis C. Lowthorp, of New York City, for plaintiff.

E. Arnold Forrest, of Conshohocken, Pa., for defendants.

WELSH, District Judge.

In this action the plaintiff seeks to enjoin the defendants from using the name of Graeber in the manufacture and sale of certain tag wiring machines, to restrain them from employing Frank Graeber in such business, and to secure an accounting of profits derived by the defendants from the manufacture and sale of Graeber machines. From the pleadings and the evidence, we make the following findings of fact:

1. The plaintiff is a resident of Pennsylvania and is in the business of manufacturing and selling tag wiring and stringing machines at Conshohocken under the registered name Graeber Machine Works.

2. The defendant New Era Manufacturing Company, a New Jersey corporation, is engaged in manufacturing equipment for making and printing tags and labels at Paterson, New Jersey. The defendant Graeber Stringing & Wiring Machine Company is a New Jersey corporation manufacturing and selling tag wiring and stringing machines at Conshohocken, Pennsylvania, and is wholly owned by the defendant New Era Manufacturing Company.

3. The amount in controversy exceeds $3,000, exclusive of interest costs, and this court has jurisdiction by reason of diversity of the citizenship of the parties.

4. On and for many years prior to April 1, 1940, one Frank Graeber manufactured and sold unpatented wiring, stringing and special machinery for use in the manufacture of tags. By reason of his special skill and the merit of his product, he had acquired a unique and valuable reputation in the tag industry, and he enjoyed a substantial portion of its trade. He did business as the Graeber Machine Works at Conshohocken and his products were generally known as "Graeber" machines, which were uniformly and particularly identified by that name.

5. Frank Graeber, desiring to be relieved of the responsibility of the business in 1939, offered it for sale through the plaintiff Cornman, who was then a real estate salesman. No satisfactory purchaser was procured, and as a result of their dealings, Graeber and Cornman entered into an oral arrangement under which they engaged in the operation of the Graeber Machine Works for several months on a tentative basis.

6. On April 1, 1940, Graeber and Cornman entered into a written contract which, after reciting Graeber's desire to be relieved of the management and financial affairs and Cornman's willingness to take over the business and pay Graeber a royalty, provided for the sale, to Cornman for $1 consideration, of the Graeber Machine Works, its equipment, material, contracts, good will and right to use the name Graeber, as long as the agreement was in effect. Cornman has continued to engage in business under the registered name Graeber Machine Works and he has used no other name.

7. The agreement provided that the plaintiff Cornman employ Graeber at $1 per year as "sole consultant engineer with absolute and sole jurisdiction to dictate * * policies for the remodeling and improving * * * and exercise complete control over the type of machine to be made * *," which employment was to continue as long as Graeber desired to furnish such services. It further provided that if the plaintiff should desire to terminate the contract he was to transfer the assets back to Graeber at inventory price. The agreement also provided for the payment of royalties to Graeber and to his wife upon his death, in accordance with a signed scale of rates. The right to terminate the agreement has not been exercised by the plaintiff.

8. Pursuant to the contract, Cornman gave up his real estate business activities and managed and handled the financial affairs of the business; Graeber ran the shop and had full charge and control of the manufacturing policy and production.

9. In August of 1941 the defendant New Era Manufacturing Company had orders for five tag stringing machines for its customers and requested the plaintiff to make them. The plaintiff was unable to do so because of his existing manufacturing limitations and the New Era Manufacturing Company thereupon requested of the plaintiff the right to manufacture such machines upon terms mutually satisfactory.

10. As a result of such negotiations, the plaintiff and New Era Manufacturing Company by an exchange of letters entered into a contract under which the New Era Manufacturing Company was given the right to manufacture five stringing machines as per the plaintiff's model and with his co-operation, on condition that New Era Manufacturing Company "would not duplicate them in excess of the five specified," without the plaintiff's agreement. Such restriction was interpreted by the parties "to mean that New Era Manufacturing Company would at no time in the future use the knowledge and information given to it by the plaintiff in the production of machines which are exact duplicates of the plaintiff's machines or so similar as to make it evident that the principles and essential features are derived substantially from the plaintiff's model."

11. In pursuance of that agreement New Era Manufacturing Company produced five stringing machines with the co-operation of the plaintiff and Graeber, and no other like machines have been manufactured by New Era Manufacturing Company since that time.

12. On December 1, 1943, the plaintiff's plant was badly damaged by a fire which destroyed the office, drawings, and patterns, and caused a shut-down of the plant.

13. Thereafter Graeber visited the plaintiff's plant less frequently, failed to make new drawings, and finally ceased to attend the plant or to render any service some time in February, 1944.

14. In March, 1944, Graeber communicated with the president of the New Era Manufacturing Company and entered into negotiations looking to the establishment of a business for the purpose of producing the Graeber machines. New Era Manufacturing Company thereupon sought to purchase the plaintiff's business for $6,000, but he declined to sell. Whereupon the New Era Manufacturing Company caused the defendant Graeber Stringing & Wiring Machine Company to be incorporated on May 19, 1944, for the purpose of manufacturing Graeber machines, which Company now operates a plant at Conshohocken where it produces such machines in competition with the plaintiff.

15. Graeber is employed by the Graeber Stringing & Wiring Machine Company as superintendent of its plant at Conshohocken

and is solely in charge of the designing and production of Graeber machines, which are similar in plan and operation to those of the plaintiff, although changes and improvements have been made.

16. Although the New Era Manufacturing Company obtained preliminary knowledge and assistance in 1941 and prepared designs and drawings from an operating machine for the purpose of manufacturing the five machines then in contemplation, it did not succeed in producing a satisfactory machine without the aid of the plaintiff and the technical assistance of Frank Graeber. When New Era Manufacturing Company, through its subsidiary, Graeber Stringing & Wiring Machine Company, engaged in the manufacture of Graeber machines in 1944, it obtained the knowledge and ability to manufacture such machines by the employment of Frank Graeber whose technical knowledge and experience were essential to the successful manufacture of Graeber machines.

17. The plaintiff Graeber Machine Works produces Graeber machines by virtue of the agreement between Graeber and Cornman made on April 1, 1940. The defendant, through its subsidiary, Graeber Stringing & Wiring Machine Company, produces, advertises and sells Graeber machines by virtue of their employment of Frank Graeber as the originator, designer and production manager of the machines bearing his name.

18. The use of the Graeber name by the plaintiff and the defendants and the close proximity of their respective plants has caused confusion in the dispatch and receipt of shipments and mail, and in the minds of customers of both companies.

In addition to the foregoing essential facts, we adopt all of the plaintiff's facts as requested except those numbered 8a, 15, 17, 25, 26, 37, 49a, 54, 57, 58, 60, and 63, which requests as stated are refused. We also adopt the defendant's requests numbers 1 to 14, 23 to 26, 28, 30, 34 to 42, 44 to 48, 50, 51, 53, 54, 58, 59, 68, 69, 71, 72, 73, 75, 76, 77, 80, 81, 82, 84, 86, 87, 88, 93 to 97, 101, 103, 108, 109, 119 and 120, and we decline the others.

From the facts recited three interesting issues are presented:

1. Was there an implied covenant in the agreement of July 1, 1940, between the plaintiff and Graeber restricting Graeber from directly or indirectly engaging in the manufacture of Graeber machines in competition with the plaintiff?

2. Has the defendant New Era Manufacturing Company breached its contract with the plaintiff by duplicating the plaintiff's machine or manufacturing a similar one by the use of knowledge and information acquired from the plaintiff in 1941?

3. Does the use of the name Graeber in connection with the business and products of the defendant Graeber Stringing & Wiring Machine Company constitute unfair competition?

The first question must be answered in the negative. The contract between the plaintiff and Graeber, although purporting to effect a sale, was obviously designed to preserve for Graeber the benefit of his genius, while relieving him of the burdens of the management and giving the benefit of the operations to the plaintiff. It reserved to Graeber the right to recapture the business if the plaintiff should discontinue, and it required him to render only such service as he desired. Nothing in it suggested the granting of an exclusive right to Graeber's own name, nor did it directly or by implication preclude him from the use of his name or his talents for his own benefit. After about three and one-half years of operation, certain dissatisfactions arose and Graeber withdrew, telling the plaintiff to send him no more money. Although the agreement had been made hopefully and in good faith, the possibility of such termination existed from the time of the making of the contract and no restrictions were expressly included in it. We believe that we are now precluded from implying such restrictions by well established principles of equity. Every individual who has not voluntarily imposed limitations upon himself may engage in business and may use his name in such business in all ordinary ways. An intention to convey an exclusive right to the use of one's own name or to restrict him in his

lawful business activity must be clearly shown. Guth Chocolate Company v. Guth, D.C., 215 F. 750. When one conveys to another the use of his name as a necessary element connected with the business, he will not be held to have parted with his right to use it in business even though he has sold the business, together with the good will. The parties must stand on the contract. The court will not read into the contract that which is not necessarily implied. If such restriction were intended, it would have been made plain in the contract. Piggly Wiggly Corporation v. Saunders, D.C., 1 F.2d 572, 578.

■ The second point involves the question as to whether the defendant New Era Manufacturing Company has, directly or through its subsidiary, used the knowledge and information given to it by the plaintiff in 1941 in the production of machines which are exact duplicates of the plaintiff's machines or so similar as to make it evident that the principles and essential features are derived from the plaintiff's model. It is conceded that the machines in question are not patented and that they can be made by competitive machine builders from available models. There appears to be no secret about the operations, component parts or process by which they are produced. When the New Era Manufacturing Company undertook to manufacture them in 1941 they obtained sketches and parts from the plaintiff and prepared drawings and specifications thereof through the use of their own engineers working from a model with the plaintiff's approval. Notwithstanding the knowledge and information so acquired, New Era Manufacturing Company was unable to produce the machines satisfactorily and they had to be shipped to the plaintiff's plant for completion and operating adjustments. There is no exact evidence as to what drawings, knowledge or information were obtained from and furnished by the plaintiff or his associates, but it is obvious that they were inadequate to enable the New Era Manufacturing Company to successfully and profitably duplicate the machines produced by the plaintiff. Without the personal knowledge, ingenuity and experience of the originator, the New Era Manufacturing Company was wholly unable to produce the Graeber machine or one so similar as to be evidence that the principal and essential features were derived from the plaintiff. The evidence does not disclose exactly what information or knowledge was furnished by the plaintiff, and we therefore conclude that the element of knowledge and information necessary to the successful manufacture of stringing and wiring machines was in fact furnished by Graeber and not by the plaintiff, and that the manufacture of such machines by the defendant is not in violation of its agreement with the plaintiff.

■ The remaining question concerns the charge of unfair competition. Upon first impression, it may seem that the actions of Graeber in leaving the plaintiff and joining in the establishment of a competing business in the same town might be deemed unethical. But an examination of the law indicates that such actions were not unlawful within the concept of the law of unfair competition. It is said that the essence of the wrong in unfair competition consists of the sale of the goods of one manufacturer for those of another or the unfair use of a similar trade name by a competitor who seeks thereby to palm off his goods as those of another. Such elements do not exist in the present case.

Here we have a somewhat unusual agreement under which a proprietor transfers his business, retaining or reserving therein a royalty interest, the sole right to direct the policy and design of the product, and the right to take back the business at a price if the transferee should, through failure or other cause, desire to dispose of it. Although it was expected that the arrangement would be successful and permanent, it did not expressly or by implication preclude the possibility of failure, and the necessity or advisability of the resumption of the business by Graeber and the use of his inherent talents, ingenuity and reputation for his own purposes. He did not expressly or by implication grant to the plaintiff the exclusive right to his name or reputation or to the knowledge or ingenuity that would enable him to compete with the business trans-

ferred. Whether or not he had just cause, he did have the right to withdraw from and compete with the plaintiff's business. And having the right so to use his name, talents and reputation, it follows that he could grant to others the same facilities for all lawful purposes, even though they may interfere with the business of the plaintiff, so long as no artifice or misleading representations as to the identity of the establishments were used.

Graeber has taken an active part in the establishment of the new business and has given to it the benefit of his knowledge and experience in the capacity of manager and originator of the machines. He directs its operations and adds his name and reputation to its products. There is no suggestion that his employment is a subterfuge; on the contrary, his knowledge and experience are the very foundations of the business. Ralph Brothers Furniture Company v. Ralph, 338 P. 360, 12 A.2d 573; White v. Trowbridge, 216 P. 11, 64 A. 862; National Distillers Products Corporation v. K. Taylor Distilling Co., D.C., 31 F.Supp. 611.

We therefore find nothing unlawful in the adoption of the name Graeber by the defendants or in their employment of Graeber in the conduct of the business; and although a deliberate and probably a disastrous competition has resulted, we cannot extend the established principles of equity to the granting of the remedies sought. We therefore conclude:

1. There is no implied covenant in the agreement of April 1, 1940, between the plaintiff and Frank Graeber, which restricted Graeber from directly or indirectly engaging in the manufacture of Graeber machines in competition with the plaintiff.

2. The defendant New Era Manufacturing Company has not breached its contract with the plaintiff by duplicating the plaintiff's machines or manufacturing similar ones by using the knowledge and information acquired from the plaintiff.

3. The employment by the Graeber Stringing & Wiring Machine Company and the acts of the defendants in competing with the plaintiff do not constitute unfair competition requiring an enjoinder by the Court.

4. The bill of complaint should be dismissed. Costs to be taxed.

Plaintiff's requests for conclusions numbers 1 and 2, and the defendants' requests numbers 1 to 7, 11, 12, 13 and 15 are also adopted, and the others are refused.