### 76566. ZAPPA v. BASDEN.
(373 SE2d 246)

BIRDSONG, Chief Judge.

The appellant Joseph Zappa appeals from a directed verdict for the appellee, John Basden. Zappa was the owner and operator of a welding shop in south Atlanta. Because of ill health he decided to close the shop and sell the building, equipment and supplies. While a real estate agent was discussing the sale of the realty, Basden, who was also a welder, came to the shop to purchase welding supplies. He had been friends with Zappa for a number of years. Zappa told Basden he should purchase the business and they discussed a sale of the realty and the equipment. Basden said that because the end of the year was coming up he decided to go ahead and buy the tools and deduct them from that year's income tax. Mrs. Zappa presented Basden with an "invoice" of the equipment he wanted, with the prices stated after each entry. Basden gave Zappa a check for the total amount of the invoice, $9,575, which was accepted and collected.

Zappa testified that he and Basden agreed to the amount of down payment — $30,000 — $15,000 to be applied to the purchase of the realty, and $15,000 to be applied to the purchase of equipment. Zappa said a purchase price for the realty was agreed upon — $115,000 and Zappa was to receive $1,500 per month until the remainder was paid. Basden said that when Zappa presented him with the amortization schedule he pointed out they had agreed it would be "a long term loan, simple interest, pay it off as fast as I could with no penalty of interest." The amortization provided for a 20-year-pay-out at 13 percent which Basden said he did not want. Basden said he told Zappa he would not agree to "an amortization. . . . No form of an amortization. . . . I just wouldn't do it. I told him, no." Basden testified that Zappa had told him "it would be alright [sic] to go a year and not pay anything on that. And then the next time I saw him, he said that will have to be caught up at the end of the year. And then before I left him that time he said, it [the amortization schedule] would have to be adhered to exactly, and that's when I told him, no, no deal." Basden requested delivery of the equipment he had purchased. He said Zappa told him: "If I wasn't going to buy the place I couldn't get the tools." Basden requested the return of his check and was refused. Zappa stated that this was a "package deal . . . equipment, customers, and building." "I didn't consider that a check for that equipment. I considered it a down payment — this was part of the down payment on the package deal. . . ."

Zappa's wife, Myrtle, was present, and she also testified that the agreement was a "package deal," and the list of equipment she had given Basden "is an incomplete list of equipment." She said she had started an inventory of all equipment that would be sold at auction after the sale of the building and the prices listed were given to her by her husband as "the bottom prices we would take at auction." Counsel asked her: "If he didn't buy this list of equipment, why was the list of equipment given to him? A. (No response.)"

Although Zappa claimed verbal agreement had been reached, he did not know what amount would be left owing. He said he had agreed to take $115,000 for the building and Basden was to select what equipment he wanted. He explained that Basden was to pay $30,000 at closing and $15,000 would be credited toward purchase of the building and the remainder toward purchase of equipment and supplies to be selected, and if Basden wanted more than that amount of equipment and supplies Zappa would "finance it at a very fair rate or less than fair, I mean lower than fair. . . . And there would be a side note. . . ." Zappa was asked: "What was the total sales price that you all had agreed on? A. I can't give you that [counsel], because I never reached that. We never reached that." At a later point Zappa was asked: "Now, did you agree with Mr. Basden or did you not on

the price of the entire transaction? A. Yes, we did. Q. And will you tell the Court and Jury if you would, what the terms of that agreement were? A. It was fifteen thousand dollars down on the real estate, which is one hundred and fifteen thousand, and at least fifteen thousand on the equipment that he was going to purchase to make it thirty thousand dollar downpayment on an overall minimum price project of one hundred and thirty thousand dollars." Mrs. Zappa concurred: "A hundred and fifteen thousand dollars for the building and fifteen thousand for inventory, minimum price. . . . Q. What was the maximum price? A. Never determined. . . . No need to determine after Mr. Basden said he didn't — backed out of the deal."

It was established that the only equipment selected by Basden was that listed on the "invoice[s]" given to Basden, which totaled $9,575 and that Basden had given a check to Zappa in that amount. A letter from Zappa's attorney was introduced in which he contended Basden had "previously refused and failed to fulfill the obligation to come to a closing of the real property which you agreed to purchase from Joseph & Myrtle Zappa."

Basden filed this action to recover the $9,575 given to Zappa. Zappa answered and counterclaimed alleging that Basden had forfeited the $9,575 "because of the breach of the contract by the Plaintiff," and because Basden had "interfered with the sale of [this] real property and a certain business" which "was a package deal by which the Defendant was to sell certain real property" and that Zappa had "substantially changed his position in reliance upon the contract and was thereby injured" and was entitled to recover damages, "special, actual, and punitive. . . ." The trial court directed a verdict for Basden in the amount of $9,575 and for Basden on Zappa's counterclaim. A motion for new trial was denied. Zappa brings this appeal from that judgment. *Held*:

Appellant has combined into one division his argument on all of his enumerations of error and we will do likewise. Error is enumerated as to the grant of a directed verdict to appellee on the complaint and on appellant's counterclaim, as well as denial of appellant's motion for new trial. At trial and on appeal, appellee's basis in law for his claim is that he and the appellant reached agreement on the sale of equipment and he paid the amount requested by appellant, but was refused delivery of the equipment or return of his money. And, that his purported agreement with appellant as to the building was for the sale of realty and unenforceable because it was not in writing as required by the Statute of Frauds, OCGA § 13-5-30 (4).

Under the statute of frauds, for an obligation to be binding on a promisor "the promise must be in writing and signed by the party to be charged" where the subject matter of the agreement is for the sale of or any interest in land. "The statute of frauds [cit.] requires all

contracts coming within its operation to be reduced to writing. In construing this provision it has been held that every essential element of the contract must be expressed in writing, in order to comply with the statutory requirements." *Stonecypher v. Ga. Power Co.*, 183 Ga. 498, 502 (189 SE 13); see also Pindar, Ga. Real Estate Law & Proc. 17, § 18.8. It is evident from the testimony of Joe and Myrtle Zappa that the so-called agreement did not provide for every essential element of the contract for no agreement was reached on the specifics of payment of that portion of the sale price not paid at closing. "Where the amount of the purchase price fixed by the contract is certain and definite, but the terms of payment are indefinite and uncertain, the writing is not a contract and confers no rights and imposes no liability." *Morgan v. Hemphill*, 214 Ga. 555, 556 (105 SE2d 580); accord *Barton v. E. D. Martin Co.*, 142 Ga. App. 586 (1) (236 SE2d 555); *Chastain v. Allison*, 122 Ga. App. 811 (178 SE2d 752); *Collins v. Wright*, 119 Ga. App. 4 (165 SE2d 878). Appellant also admits that future negotiations were anticipated, both as to selection of equipment and supplies, and sales price.

Inextricably, intertwined with this purported oral agreement for the sale of realty is whether the parties did anything more than agree to reach an agreement in the future. " 'Unless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect.' " *Hartrampf v. Citizens &c. Investors*, 157 Ga. App. 879, 881 (278 SE2d 750); accord *John Bleakley Ford v. Estes*, 164 Ga. App. 547 (1) (298 SE2d 270); *Malone Constr. Co. v. Westbrook*, 127 Ga. App. 709 (194 SE2d 619). " ' "An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto." ' " *Russell v. City of Atlanta*, 103 Ga. App. 365, 367 (119 SE2d 143); accord *Wells v. H. W. Lay & Co.*, 78 Ga. App. 364, 367 (50 SE2d 755). We find the so-called verbal agreement was only an agreement to reach an agreement in the future.

Appellant argues that he relied upon his agreement with Basden to his detriment and disposed of certain material at a reduced price. Basden admitted that he told Zappa that if he purchased the shop he would not be interested in his motorcycle business. Zappa modified motorcycles for racing and motocross and stocked the material to accomplish those modifications. He sold this material. Appellant contends that under OCGA § 51-1-8 a private duty may arise from a relation created by contract, express or implied, which, if accompanied by damage would give him a cause of action, and under OCGA § 51-1-6, where the law requires a person to perform an act for the benefit of another, or to refrain from doing an act which may injure another, although no cause of action is given in express terms, "the injured party may recover for the breach of such legal duty if he suffers dam-

ages. . . ." Appellant argues that he had a contract, the appellee had a duty not to injure him, and he suffered damage because of appellee's actions. We find both Code sections inapplicable to the facts of this case. First, the statute of frauds prevented the formation of an enforceable contract for an oral agreement for the sale of realty. Secondly, the parties failed to agree on all necessary elements of a contract. Appellant has failed to cite us to any legal authority authorizing damages for the failure of a party to carry out the purported terms of an oral contract for the sale of realty.

It cannot be argued that there was such part performance of the verbal agreement that it would have been a fraud on appellee's part to refuse to comply with the agreement. OCGA § 13-5-31 (3). First, actionable fraud cannot be based merely on statements referring to future events, or which are merely promissory as to future acts and are not an inducement to enter the contract. *Scott v. Lumpkin*, 153 Ga. App. 17, 20 (264 SE2d 514). Secondly, partial payment of the purchase price, unaccompanied by possession or valuable improvements does not meet the test of part performance. *Kenimer v. Thompson*, 128 Ga. App. 253 (1) (196 SE2d 363). Partial performance which will vitiate the statute of frauds must be " ' "substantial and essential to the contract and which results in a benefit to one party and a detriment to the other." ' " *Metzgar v. Reserve Ins. Co.*, 149 Ga. App. 404 (254 SE2d 517); accord *Hudson v. Venture Indus.*, 147 Ga. App. 31, 32 (248 SE2d 9). Here, even though there was a sale of appellant's "exotic" supplies, it may have resulted in a detriment to the appellant but it did not result in a benefit to the appellee. Further, even if appellant had sold the building to appellee, he would have to dispose of the same "exotic" material to someone, for the appellee had advised Zappa that he was not interested in his motorcycle business which utilized the materials disposed of by appellant. Zappa had previously planned to sell his supplies at auction after he sold his building through the realtor. It is not satisfactorily explained why appellant's sale of the building to appellee required him to pursue a different course of action, rather than the one decided upon when he was selling the building through the realtor.

" 'That part performance which will remove a contract from the statute of frauds refers to performance of the provisions of the contract and not to acts done by one because of his belief in and reliance on the agreement.' " *Sierra Assoc. v. Continental &c. Trust Co.*, 169 Ga. App. 784, 789 (315 SE2d 250); accord *Smith v. Davidson*, 198 Ga. 231, 238 (3) (31 SE2d 477); *Neely v. Sheppard*, 185 Ga. 771, 780-781 (196 SE 452); *Spiegel v. Hays*, 103 Ga. App. 293, 301 (119 SE2d 123). " 'The performance of other acts independent of and not required by the terms of the contract will not be sufficient to constitute part performance so as to bring it within the exception of [OCGA § 13-5-31

(3)].' " *Sierra Assoc.*, supra at 789; *Moon v. Stone Mountain Mem. Assn.*, 223 Ga. 696, 698 (157 SE2d 461). The act of the plaintiff in selling his supplies which were not wanted by the appellee was not in conformity to any provision of the alleged oral contract but was in reliance upon the purported agreement. Hence, the facts do not show such partial performance of the oral agreement as would remove it from the statute of frauds.

Accordingly, we find the verbal agreement of appellant and appellee was nothing more than an agreement to reach an agreement in the future, and was a verbal agreement for the sale of realty which was required to be in writing to remove it from the proscription of the statute of frauds. Thus, the trial court did not err in directing a verdict for appellee on his complaint, and on appellant's counterclaim, and in denying appellant's motion for new trial.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 8, 1988 —
REHEARING DENIED SEPTEMBER 21, 1988

*Paul S. Weiner*, for appellant.
*Monroe Ferguson*, for appellee.