## A93A1981. PETTIT v. GRAY et al.
### (439 SE2d 673)

BIRDSONG, Presiding Judge.

Mark Pettit appeals the grant of summary judgment to Susie Gray and Calhoun Outlet Center Limited Partnership in his suit seeking specific performance, injunctive relief and damages, arising out of Gray's termination of Pettit's ground lease of billboard property. Pettit contends that he and Gray entered a five-year ground lease, at a rent of $700 per year, payments to be made annually; that he was not in default under the lease and that he paid the rent as soon as he got Gray's termination notice. He had declared bankruptcy three months prior to termination of the lease for nonpayment of rent, and listed the lease as an exempt property interest. He contends Gray terminated the lease because she intended to sell, and did sell, the property unencumbered to Calhoun Outlet Center.

Pettit contends that as there was no provision in the lease stating the date each annual payment was to be made, he was not in default, and that the equities of the parties should be considered by a jury. Appellees argue that as the bankruptcy trustee never assumed the lease, Pettit had no interest in the property after Gray terminated the lease and returned Pettit's tardily-tendered payment. *Held*:

We find independent reasons sustaining the trial court's grant of summary judgment to appellees. The lease agreement states no date for the yearly payment and is silent as to the lessor's right to terminate upon nonpayment. It is unenforceable under the statute of frauds as to material terms which are not specifically stated in the contract, or which have not been performed in accordance with part performance as established by the parties. See OCGA §§ 13-5-30 (4); 13-5-31. To comply with the statute of frauds, a writing must be complete in itself, leaving nothing to rest in parol. *F. C. Brooks & Sons v. Shell Oil Co.*, 226 Ga. 435 (175 SE2d 557). To be valid and to authorize specific performance, a contract conveying an interest in land, including a lease (*Newton v. Allen*, 220 Ga. 681 (141 SE2d 417)), must be certain enough to enable either party to enforce it according to its terms. See *Powell v. Adderholdt*, 230 Ga. 211 (196 SE2d 420); *Morgan v. Hemphill*, 214 Ga. 555 (105 SE2d 580); *Pierce v. Rush*, 210 Ga. 718

(82 SE2d 649); *Peacock v. Horne*, 159 Ga. 707 (126 SE 813). The failure of the parties to agree to specifics of payment is fatal to the contract where it is sought to be enforced on that issue. *Zappa v. Basden*, 188 Ga. App. 472 (373 SE2d 246).

The writing, executed December 12, 1989, provides that the lease was "for a term of five (5) years beginning December 15, 1989. . . . The consideration for the lease contract is the sum of Seven Hundred Dollars ($700) per year, rental, payable by Lessee annually." Nothing in the lease contemplates that the lessee might fail to pay the rent "annually," or what the lessor's remedy might be if the lessee failed to pay the rent "annually." Pettit contends he paid the first annual payment at the inception of the lease (December 15, 1989). If he was to comply with the terms of the contract and pay "annually," he. must pay on December 15 of each year for the term of the lease. He contends he paid the second annual payment in late December of 1990; whatever day he paid it, he evidently paid it on December 15, for judging the evidence in Pettit's favor as respondent on motion for summary judgment (*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474)), we must assume he paid the second payment "annually." Nothing to the contrary appears.

If Pettit were to comply with the terms of the lease as far as they can be determined and as the parties had established by their conduct, he had to pay "annually," that is, on December 15. Gray terminated the lease on December 17, 1991, for nonpayment of rent. The payment of $700 "annually" was an express consideration of the agreement. When Pettit failed to pay the rent "annually," that is, by December 15, 1991, he was in default, and the consideration for the lease "agreement" (such as it was) failed. The agreement does not provide that he was entitled to retain a lease interest if he failed to pay "annually," or that he was to be given a grace period or that he was entitled to notice of termination for failure to pay rent "annually." No fault can be found with the lessor's termination of the lease for Pettit's failure to pay "annually," i.e. by December 15, 1991. There is nothing in the contract which can be specifically enforced in Pettit's favor.

As for the equities, Pettit contends Gray knew he had filed bankruptcy three months prior to the annual payment date. Even though Pettit listed this lease as "exempt," Gray could hardly be expected to assume the rent would be paid "annually," and indeed it was not. She had every right to terminate the lease when the rent was not paid according to the agreement as written, that is, "annually," which was December 15, 1991. The fact that she planned to sell the property unencumbered to someone else does not in any way touch her right to terminate the lease for nonpayment and failure of consideration, according to its terms. Moreover, Gray asserts the trustee did not as-

sume the lease, and Pettit does not contend the trustee did assume the lease. Pettit has no legal interest in the property, and we do not see that he has an equitable interest in it.

*Judgment affirmed. Pope, C. J., and Andrews, J., concur.*

### ON MOTION FOR RECONSIDERATION.

Appellant says we ignored Supreme Court cases which hold that under a lease agreement in which no due date is stated, the rent generally is due at the end of the rental year. *Matlock v. Duncan*, 220 Ga. 200, 202 (137 SE2d 661); *F. & W. Grand &c. Stores v. Eiseman*, 160 Ga. 321, 328 (127 SE 872); *Parker v. Gortatowsky*, 129 Ga. 623, 626 (59 SE 286). However, since the lease agreement was entered "for a term of five years beginning December 15, 1989," the "end of the rental year" was December 14, which is one day sooner than we said the parties, at best, may have established by the making and acceptance of his second payment "in late December of 1990." Appellant merely proves the weakness of his position by asserting that by accepting his payment in "late December of 1990," appellee agreed he could make the annual payments "late."

*Motion for reconsideration denied.*

DECIDED NOVEMBER 22, 1993 —
RECONSIDERATION DENIED DECEMBER 16, 1993 — 

*Hine, Niedrach & McClellan, John F. McClellan, Jr.,* for appellant.

Mark J. Pettit, *pro se.*

*Chance, Maddox & Smith, J. C. Maddox, Suzanne H. Hutchinson,* for appellees.