A07A0833. ESTATE OF RYAN v. SHUMAN.
(655 SE2d 644)

MILLER, Judge.

The estate of Anthony V. Ryan, Sr. (the "Estate") appeals from a grant of summary judgment entered against it on an alleged lease-purchase agreement (the "Agreement") between Brad Shuman and the Estate. The Estate contends that the trial court erred in finding that the Agreement was enforceable and that Shuman was entitled to specific performance of the purchase option contained therein. We agree and reverse, and further find that the Estate is entitled to judgment as a matter of law on each of these issues.

> On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law. [Cit.]

*Smith v. Atlantic Mut. Cos.*, 283 Ga. App. 349, 350 (641 SE2d 586) (2007).

---

So viewed, the evidence shows that Shuman was a friend of Anthony Ryan, Jr., who served as the initial executor of the Estate. Under the terms of Ryan, Sr.'s will, his widow, Porter Ryan, was to receive all income generated from assets held by the Estate during her lifetime. One of those assets is the former Ryan family home, located on Whitfield Avenue in Chatham County (the "Property").

In approximately August 2002, Shuman approached Ryan, Jr. about the possibility of leasing or purchasing the Property, and Ryan, Jr. responded that he would inquire as to that possibility. Shuman again inquired about the Property sometime between September and December 2002. Ryan, Jr. indicated that he had consulted with an attorney about the possibility of leasing or selling the Property to Shuman, and told Shuman to have the Property surveyed and appraised. That appraisal was sent to Shuman by letter dated February 10, 2003, and valued the land, absent the residence thereon, at $300,000. That same month, Ryan, Jr. consulted with the Estate's attorney, who told him that any sale of the Property at less than fair market value would constitute a breach of his fiduciary duties to the Estate. The attorney also told Ryan, Jr. that, because his sister was the "ultimate beneficiary" of the Property (in that she would receive the Property following her mother's death), she should be given the opportunity to purchase it at the appraised price. On February 19, 2003, the Estate wrote to Ryan's sister, Fran Tuttle, and offered to sell her the Property for $300,000. On February 21, 2003, Tuttle responded that, based on a previous appraisal, the Property was worth at least $375,000, and should not be sold to anyone for less than that amount.

According to the Estate's attorney, he spoke with both Ryan, Jr. and Shuman several times in February 2003 about the possibility of the Estate either leasing or selling the Property to Shuman, or entering into a lease/purchase agreement with him. The attorney testified that the parties eventually agreed, by late February or early March 2003, that Shuman would lease the property for three years, that Shuman would perform certain work on the Property in exchange for part of the rent, and that the lease would not contain an option to purchase. The attorney last discussed the matter with both men on March 12, 2003, and he thereafter finalized a draft of a proposed lease. Ryan, Jr. died unexpectedly on March 20, 2003, and that lease was never executed.[1]

---

[1] That lease differed materially from the Agreement, in that it contained no option to purchase, specified a monthly rental amount, due date, and to whom payments should be made, gave the Estate a remedy in the event of default or breach, and stated that, as part of his consideration, Shuman was to spend a minimum of $25,000 on repairs and improvements to the property specified in the lease.

In anticipation of leasing the Property, Shuman began "cleaning it up" sometime in late 2002 or early 2003. Such work included yard work and some interior cleaning of the residence. Shuman began interior renovations at the house located on the Property sometime after February 15, 2003, and in April 2003, following Ryan, Jr.'s death, Shuman moved into that residence.

Following her brother's death, Tuttle became the administratrix of the Estate and on April 26, 2003 she met with Shuman to discuss his occupancy of the Property. Specifically, Tuttle told Shuman that she understood he had no lease for the Property and that if he was to remain there the parties would need to enter into a written agreement. Shuman responded that he had entered into a "handwritten" lease with Ryan, Jr., although he has never produced such a document. Shuman eventually produced the Agreement that is the subject of the current litigation, and his is the only known copy thereof. The Agreement provides:

> I, Anthony V. Ryan, Jr., as the Executor of the Estate of Anthony V. Ryan, Sr. hereby lease to Brad Shuman all the property including improvements located thereon known as 9219 Whitfield Avenue, Savannah, Georgia for the term of ninety-nine (99) years or until my Mother, Porter M. Ryan, dies, whichever event comes first;
>
> As consideration for this lease Brad Shuman agrees to pay all taxes on the property when due and keep property and flood insurance on the property current and in force until one of the above events occurs;
>
> At the end of ninety-nine years or the death of my Mother, whichever comes first, Brad Shuman will pay the Estate of Anthony V. Ryan. Sr., or the beneficiaries thereof if the estate is closed, the sum of One Hundred Fifty Thousand ($150,000.00) and the Executor of the Estate or beneficiary and/or their issue shall convey marketable title to this property to Brad Shuman immediately upon the payment of said sum.
>
> This document represents the entirety of the agreement between the parties, and acknowledges the fact that the property needs extensive repairs which affects the fair market value of the property.

The Agreement is dated February 15, 2003, at or about the time the Estate's attorney testified that he began discussing a proposed

lease or lease/purchase of the Property with Ryan, Jr. and Shuman, and one month before the attorney last spoke with such men about a proposed lease.

On April 29, 2003, Tuttle told Shuman to cease all work at the Property, and asked him for receipts evidencing any monies he had spent in repairing and improving the same. On September 8, 2003, Tuttle, in her capacity as administratrix of the Estate, initiated the current action against Shuman, seeking to have him evicted from the Property and requesting back rent, a declaratory judgment that no valid agreement existed between the Estate and Shuman for either the lease or the sale of the Property, and any damages caused by Shuman's work on the property that had been performed by unlicensed contractors and in violation of the applicable building codes. Shuman filed an answer and counterclaim, seeking a declaration that the Agreement was valid and requesting reimbursement for amounts spent on improving the Property. Following the death of Porter Ryan, Shuman amended his counterclaim to seek specific performance of the Agreement.

The Estate moved for summary judgment on its claim for declaratory relief, arguing that the Agreement was unenforceable for failure to satisfy the Statute of Frauds. The trial court denied that motion and found that the Agreement was enforceable. Additionally, acting sua sponte, the trial court granted summary judgment in favor of Shuman on his claim for specific performance. This appeal followed.

1. The trial court found that the Agreement satisfied the Statute of Frauds and was therefore enforceable. While we concur that the Agreement satisfies the Statute of Frauds, we nevertheless find it is unenforceable for failure of consideration.

Under the Statute of Frauds, a contract conveying an interest in real property, including options to purchase land and leases, must be in writing. See, e.g., *Walden v. Smith*, 249 Ga. App. 32, 34 (1) (546 SE2d 808) (2001); *Pettit v. Gray*, 211 Ga. App. 439 (439 SE2d 673) (1993). Such a writing must include every essential element of the contract, including the identity of the parties, a legally adequate description of the property, the consideration, and the terms of payment. *A. S. Reeves & Co. v. McMickle*, 270 Ga. App. 132, 133 (605 SE2d 857) (2004). The Agreement contains each of these essential elements, and the trial court therefore correctly found that it satisfied the Statute of Frauds.

The Agreement is nevertheless unenforceable because of failure of consideration. The Agreement specified that, as consideration for his lease of the premises, Shuman would "pay all taxes on the property when due and keep property and flood insurance on the

property current and in force." Shuman testified, however, that he had neither paid taxes on nor maintained insurance on the Property.

Shuman attempted to explain this failure by asserting that he and Ryan, Jr. had agreed that Shuman would pay monthly rent in the amount of $600, and it was his understanding that these amounts would approximate the annual cost of the insurance and taxes. Presumably, Ryan, Jr. was to use these funds to pay the taxes and insurance on the Property. Assuming arguendo that evidence of this "oral understanding" is admissible to explain whether Shuman complied with the terms of the Agreement,[2] Shuman testified that he did not, in fact, pay rent as required by the "oral understanding." Specifically, Shuman deposed that he made no such rental payments until after the Estate initiated the current action. Thus, by Shuman's own admission, he failed to pay the consideration called for under the Agreement, and this "[t]otal failure of consideration . . . renders [the Agreement] null and void." (Citation omitted.) *McDuffie v. Criterion Cas. Co.*, 214 Ga. App. 818, 821 (449 SE2d 133) (1994). See also *Clark's Super Gas v. Tri-State Systems*, 129 Ga. App. 650, 651 (200 SE2d 472) (1973) (it is incumbent upon one seeking to enforce a contract "to establish that [he has] complied with the conditions of the contract").

Furthermore, we find that the lease provisions of the Agreement are not severable from the purchase option, meaning that Shuman's failure to pay any rent under the lease provisions also voids the purchase option. Under OCGA § 13-1-8 (a),

a contract may be either entire or severable. In an entire contract, the whole contract stands or falls together. In a severable contract, the failure of a distinct part does not void the remainder. The primary task in determining contract severability remains that of ascertaining the intention of the parties. The parties' intent may be expressed directly, through a severability clause, or indirectly, as when the contract contains promises to do several things based upon multiple considerations.

---

[2] Arguably, Shuman's testimony could be viewed as parol evidence that varies the terms of the contract. In essence, Shuman testified that the parties made a subsequent oral agreement, allowing him to pay rent in an amount "he understood" to approximate the then-monthly cost of taxes and insurance in lieu of actually maintaining the insurance or paying the property taxes, and without regard to the probability that those costs would increase over the term of the lease. If viewed as a modification of the Agreement, this evidence would be inadmissible. See *Wiley v. Tom Howell & Assoc.*, 154 Ga. App. 235, 236 (267 SE2d 816) (1980) (Parol or extrinsic evidence may not be used to supply or modify an essential element of a contract governed by the Statute of Frauds.).

(Punctuation and footnotes omitted.) *Bulloch South, Inc. v. Gosai,* 250 Ga. App. 170, 174-175 (1) (b) (550 SE2d 750) (2001).

To be valid, an option to purchase must be supported by valuable consideration. See, e.g., *Warthen v. Moore,* 258 Ga. 198, 200 (366 SE2d 666) (1988). Thus, to be severable, the lease and option provisions of the Agreement would need to be supported by separate consideration — i.e., the consideration supporting the lease would need to be distinguishable from the consideration supporting the option. In lease-option contracts, such as the Agreement, it is the payment of rent that constitutes the consideration necessary to support the option. See *Irwin v. Dailey,* 216 Ga. 630 (118 SE2d 827) (1961) (rental under lease could constitute sufficient consideration to support purchase option given to lessee); *McKown v. Heery,* 200 Ga. 819, 820 (1) (38 SE2d 425) (1946) ("[S]ince under the terms of the contract the optionee was to pay a specified sum per month as rental[,] [s]uch payment would be sufficient consideration to support the option, which is part of the same contract. [Cits.]").

Thus, where a party has failed to comply with the lease terms of a lease-option agreement, the option is not supported by valuable consideration and may not be enforced. See *Saine v. Clark,* 235 Ga. 279, 280 (219 SE2d 407) (1975); *Pearson v. George,* 209 Ga. 938 (77 SE2d 1) (1953). See also *Crossman v. Fontainebleau Hotel Corp.,* 273 F2d 720, 727 (I), n. 5 (5th Cir. 1959) ("An option to purchase contained in a lease is an integral part of that lease and the contract in such lease is indivisible. [Cits.]").

2. We further find that the trial court erred in holding, sua sponte, that even if the Agreement was otherwise unenforceable, Shuman's repairs to the property nevertheless entitled him to specific performance of the Agreement under an equitable exception to the Statute of Frauds. Specifically, the trial court considered Shuman's testimony that he and Ryan, Jr. had orally agreed (i) that Shuman's payment of rent would satisfy the Agreement's requirement that Shuman pay all taxes on and maintain insurance on the Property; and (ii) that Shuman's repairs to the Property could substitute for the rental payments for an indefinite period of time. Relying on this evidence, the trial court found that Shuman's work on the Property constituted a part performance of the Agreement, as modified by his conversations with Ryan, Jr., that entitled Shuman to enforce the same under OCGA § 13-5-31 (3).[3]

---

[3] That Code section provides that the Statute of Frauds will not apply to invalidate an oral contract "[w]here there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance."

Neither logic nor legal authority supports the proposition that part performance of an otherwise unenforceable written agreement, as modified by subsequent oral agreements between the parties, transforms it into an enforceable parol contract. Indeed, this Court has specifically held that a party who "explicitly requests specific performance of the purchase option contained in [a] *written* lease-purchase agreement" may not seek relief under an equitable exception to the Statute of Frauds, applicable to oral contracts. (Emphasis in original.) *Makowski v. Waldrop*, 262 Ga. App. 130, 134 (1) (b) (584 SE2d 714) (2003). See also *Pettigrew v. Collins*, 246 Ga. App. 207, 208 (539 SE2d 214) (2000); *Wiley v. Tom Howell & Assoc.*, 154 Ga. App. 235, 237 (267 SE2d 816) (1980) (a contract "that has been partly reduced to writing and partly rests in parol, does not meet the requirement of the [S]tatute of [F]rauds and is incapable of enforcement") (citation and punctuation omitted).

Moreover, Shuman's own testimony establishes that, even were he allowed to rely on parol evidence, he could not establish the existence of a valid oral contract between Ryan, Jr. and himself. One claiming under an alleged parol agreement for the sale of land must be able to establish that the parties had agreed as to all essential terms. *Braddy v. Boynton*, 271 Ga. 55 (518 SE2d 411) (1999). Here, Shuman deposed unequivocally that he and Ryan, Jr. had not reached a final agreement as to all of the essential elements of the proposed contract. Rather, he testified that the Agreement represented a preliminary agreement, the purpose of which was to provide Shuman with some kind of assurance that he would have an interest in the Property before he began doing any work on the same. He further explained that Ryan, Jr. was going to have his attorneys draft a final contract, which would incorporate all of the terms agreed to by the parties.

Under Georgia law, this evidence is insufficient to establish the existence of an enforceable agreement. "Unless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect." (Citations and punctuation omitted.) *Zappa v. Basden*, 188 Ga. App. 472, 475 (373 SE2d 246) (1988). See also *Osta v. Moran*, 208 Ga. App. 544, 545 (1) (430 SE2d 837) (1993) ("An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto.") (citation and punctuation omitted). By Shuman's own admission, he and Ryan, Jr. had an "agreement to agree," with the details to be provided by a contract to be drafted by the Estate's attorney. Accordingly, Shuman cannot prove the existence of a valid parol contract.

Furthermore, Shuman would not be entitled to specific performance of even a valid parol contract. Under OCGA § 23-2-131 (a), one

is entitled to specific performance of a parol contract for the sale of land only "if the contract has been so far executed by the party seeking relief and at the instance or by the inducements of the other party that if the contract were abandoned he could not be restored to his former position." Here, Shuman can be restored to his pre-contract position by recovering in quantum meruit for any improvements or repairs made to the Property. See *Pettigrew v. Collins*, 246 Ga. App. 207, 208, n. 4 (539 SE2d 214) (2000).

In light of the foregoing, we reverse the trial court's finding that the Agreement is enforceable and that Shuman is entitled to specific performance of the Agreement, as modified by his conversations with Ryan, Jr., and find that the Estate is entitled to judgment as a matter of law on each of these issues. This leaves for trial Shuman's claims in quantum meruit and the Estate's claims for a reasonable rent and for damages allegedly caused by any work Shuman had done on the Property which was performed by unlicensed contractors and in violation of the applicable building codes.

*Judgment reversed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 29, 2007 —
RECONSIDERATION DENIED DECEMBER 14, 2007 —

*Callaway, Braun, Riddle & Hughes, Edward M. Hughes*, for appellant.

*Gannam & Gnann, J. Hamrick Gnann, Jr.*, for appellee.